UNITED STATES of America,
Plaintiff-Appellee,

v.

Martin Molina OVIEDO, Jr.,
Defendant-Appellant.

No. 75–1899.

United States Court of Appeals,
Fifth Circuit.

Jan. 12, 1976.

882

Alan Brown, San Antonio, Tex., for defendant-appellant.

John E. Clark, U. S. Atty., Joel D. Conant, Ray Jahn, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before GODBOLD, DYER and MORGAN, Circuit Judges.

DYER, Circuit Judge.

Oviedo appeals from a judgment of conviction for the attempted distribution of heroin, in violation of 21 U.S.C.A. § 846.[1] Oviedo contends that under the facts of this case, he is not guilty of any criminal offense. We agree and reverse.

Oviedo was contacted by an undercover agent, who desired to purchase narcotics. Arrangements were made for the sale of one pound of heroin. The agent met Oviedo at the appointed time and place. Oviedo transferred the substance to the agent, and asked for his money in return. However, the agent informed Oviedo that he would first have to test the substance. A field test was performed with a positive result. Oviedo was placed under arrest.

Subsequent to the arrest, a search warrant was issued for Oviedo's residence. When the search was executed, two pounds of a similar substance was found hidden in a television set. Up to this point, the case appeared unexceptional.

A chemical analysis was performed upon the substances seized, revealing that the substances were not in fact heroin, but rather procaine hydrochloride, an uncontrolled substance.[2] Since any attempt to prosecute for distribution of heroin would have been futile, the defendant was charged with an attempt to distribute heroin.

At trial, Oviedo took the stand and stated that he knew the substance was not heroin, and that he, upon suggestion of his cohorts, was merely attempting to "rip off" the agent. It was, in his view, an easy way to pocket a few thousand dollars.

The court instructed the jury that they could find Oviedo guilty of attempted distribution if he delivered the substance thinking it to be heroin.[3] The jury rejected Oviedo's claimed knowledge of the true nature of the substance, and returned a verdict of guilty. Although Oviedo argues on appeal that there was insufficient evidence to establish that he thought the substance was heroin, this contention is without merit.[4]

---

1. 21 U.S.C.A. § 846 provides:

   Any person who attempts or conspired to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

2. Although not an opium derivative, procaine hydrochloride will give a positive reaction to the Marquis Reagent Field Test.

3. The court charged the jury on this issue:

   In other words, if you find beyond a reasonable doubt that Mr. Oviedo did knowingly and unlawfully and intentionally attempt to distribute what you have found beyond a reasonable doubt . . . he believed to be one pound of heroin . . . it would be no defense that the substance involved was not actually heroin. On the other hand, if you do not find beyond a reasonable doubt that the Defendant believed the substance involved to be heroin, even though you might find all of the other elements of the offense present beyond a reasonable doubt, then it would be your duty to acquit the Defendant.

4. The fact that the procaine was secreted inside a television set, together with the discus-

We thus take as fact Oviedo's belief that the substance was heroin.

██ The facts before us are therefore simple—Oviedo sold a substance he thought to be heroin, which in reality was an uncontrolled substance. The legal question before us is likewise simple—are these combined acts and intent cognizable as a criminal attempt under 21 U.S.C.A. § 846. The answer, however, is not so simple.

██ Oviedo and the government both agree the resolution of this case rests in an analysis of the doctrines of legal and factual impossibility as defenses to a criminal attempt. Legal impossibility occurs when the actions which the defendant performs or sets in motion, even if fully carried out as he desires, would not constitute a crime. *U. S. v. Conway*, 5 Cir. 1975, 507 F.2d 1047. Factual impossibility occurs when the objective of the defendant is proscribed by the criminal law but a circumstance unknown to the actor prevents him from bringing about that objective. *Id.* at 1050. The traditional analysis recognizes legal impossibility as a valid defense, but refuses to so recognize factual impossibility. *U. S. v. Berrigan*, 3 Cir. 1973, 482 F.2d 171.

These definitions are not particularly helpful here, for they do nothing more than provide a different focus for the analysis. In one sense, the impossibility involved here might be deemed legal, for those *acts* which Oviedo set in motion, the transfer of the substance in his possession, were not a crime. In another sense, the impossibility is factual, for the *objective* of Oviedo, the sale of heroin, was proscribed by law, and failed only because of a circumstance unknown to Oviedo.[5]

Although this issue has been the subject of numerous legal commentaries,[6] federal cases reaching this question are few, and no consensus can be found.[7] *United States v. Berrigan*, 3 Cir. 1973, 482 F.2d 171; *United States v. Heng Awkak Roman,* S.D.N.Y.1973, 356 F.Supp. 434, aff'd 2 Cir. 1973, 484 F.2d 1271; *Rosado v. Martinez*, D.P.R., 1974, 369 F.Supp. 477; *United States v. Hair*, D.C.1973, 356 F.Supp. 339; *see also United States v. Marin*, 2 Cir. 1975, 513 F.2d 974.

In *Roman*, the defendants were transporting a suitcase containing heroin.

---

sions between Oviedo and the undercover agent, lead to the reasonable inference that Oviedo thought the substance to be heroin, and support the jury's conclusion.

5.  At least one writer has recognized that legal impossibility is logically indistinguishable from factual impossibility. See Hall, Criminal Attempt—A Study of Foundations of Criminal Liability, 49 Yale L.J. 789, 836 (1940).

6.  See articles listed in *United States v. Berrigan*, 3 Cir. 1973, 482 F.2d 171, 187, fn. 29.

7.  State court cases are similarly divergent. State courts have labelled the following situations as involving legal impossibility, and concluded that there could be no attempt: (1) A person who accepts goods which he believes to be stolen, but which are not in fact stolen, is not guilty of attempting to receive stolen goods. *People v. Jaffe*, 1906, 185 N.Y. 497, 78 N.E. 169. (2) A person who offers a bribe to one whom he believes to be a juror, but who was not a juror, is not guilty of attempting to bribe a juror. *State v. Taylor*, 1939, 345 Mo. 325, 133 S.W.2d 336. (3) A hunter who shoots a stuffed deer, believing it to be alive, is not

guilty of attempting to shoot a deer out of season. *State v. Guffey*, Mo.App.1953, 262 S.W.2d 152.

In other apparently analogous situations, courts have concluded that the impossibility is factual, and therefore no defense to a charge of attempt: (1) A person who fires a gun at a bed, thinking it to be occupied by a man, is guilty of attempted murder, even though the bed is empty. *State v. Mitchell*, 1902, 170 Mo. 633, 71 S.W. 175. (2) A person who possesses a substance thinking it is narcotics, is guilty of attempted possession, notwithstanding that the substance is in fact talcum powder. *People v. Siu*, 1954, 126 Cal.App.2d 41, 271 P.2d 575. (3) A person who introduces instruments into a woman for the purpose of producing an abortion is guilty of attempting an abortion, even though the woman is not pregnant. *People v. Cummings*, 1956, 141 Cal.App.2d 193, 296 P.3d 610.

Other impossibility cases are collected in Annot., 37 A.L.R.3d 375. We list these cases not to offer support to our conclusions, but rather to illustrate the inconsistency of approach which plagues this area of legal theory.

Through the aid of an informer and unknown to the defendants, the contents of the suitcase were replaced with soap powder. The defendants were arrested when they attempted to sell the contents of the suitcase, and were subsequently charged with *attempted* possession with intent to distribute. The court rejected defendants' contention that they could not be charged with attempted possession, since it was impossible for them to possess heroin. Recognizing the difficulty in distinguishing between legal and factual impossibility, the court never so categorized the case. Nevertheless, the court concluded that since the objective of the defendants was criminal, impossibility would not be recognized as a defense.

The defendants in *Berrigan* were charged with attempting to violate 18 U.S.C.A. § 1791, prohibiting the smuggling of objects into or out of a federal correctional institution. Since the evidence established that the warden had knowledge of the smuggling plan, and since lack of knowledge was a necessary element of the offense, the defendants could not be found guilty of violating the statute. The court held that such knowledge by the warden would also preclude conviction for the attempt, since "attempting to do that which is not a crime is not attempting to commit a crime." *Berrigan*, at 190.

The *Berrigan* court rested its determination on a strict view of legal impossibility. According to the court, such impossibility exists when there is an intention to perform a physical act, the intended physical act is performed, but the consequence resulting from the intended act does not amount to a crime. In this analysis, the intent to perform a physical act is to be distinguished from the motive, desire or expectation to violate the law.[8]

The application of the principles underlying these cases leads to no clearer result than the application of our previous definitions of legal and factual impossibility. Applying *Roman*, we would not concern ourselves with any theoretical distinction between legal and factual impossibility, but would affirm the conviction, since the objective of Oviedo was criminal. Applying *Berrigan*, we would look solely to the physical act which Oviedo "intended", the transfer of the procaine in his possession, and we would conclude that since the transfer of procaine is not criminal, no offense is stated. The choice is between punishing criminal intent without regard to objective acts, and punishing objective acts, regarding intent as immaterial.

In our view, both *Roman* and *Berrigan* miss the mark, but in opposite directions. A strict application of the *Berrigan* approach would eliminate any distinction between factual and legal impossibility, and such impossibility would *always* be a valid defense, since the "intended" physical acts are never criminal.[9] The *Roman* approach turns the attempt statute into a new substantive criminal statute where the critical element to be proved is *mens rea simpliciter*. It would allow us to punish one's thoughts, desires, or motives, through indirect evidence, without reference to any objective fact. *See Berrigan, supra* at 189, fn. 39. The danger is evident.

We reject the notion of *Roman*, adopted by the district court, that the conviction in the present case can be sustained since there is sufficient proof of intent, not because of any doubt as to the sufficiency of the evidence in that regard, but because of the inherent dangers such a precedent would pose in the future.

When the question before the court is whether certain conduct consti-

---

8. This distinction is easily illustrated. If A takes a book which he thinks belongs to B, his desire or expectation is criminal. However, if the book turns out to belong to A, A does not have the requisite intent to be guilty of a criminal attempt, for his intent is to take the book,

and it is not criminal to take one's own book. *See Berrigan, supra,* at 188, fn. 35.

9. If the "intended" physical acts were criminal, the defendant would be guilty of the completed crime, rather than the attempt.

tutes mere preparation which is not punishable, or an attempt which is, the possibility of error is mitigated by the requirement that the objective acts of the defendant evidence commitment to the criminal venture and corroborate the *mens rea*. *United States v. Mandujano,* 5 Cir. 1974, 499 F.2d 370. To the extent that this requirement is preserved it prevents the conviction of persons engaged in innocent acts on the basis of a *mens rea* proved through speculative inferences, unreliable forms of testimony, and past criminal conduct.

Courts could have approached the preparation—attempt determination in another fashion, eliminating any notion of particular objective facts, and simply could have asked whether the evidence at hand was sufficient to prove the necessary intent. But this approach has been rejected for precisely the reasons set out above, for conviction upon proof of mere intent provides too great a possibility of speculation and abuse.

In urging us to follow *Roman,* which found determinative the criminal intent of the defendants, the government at least implicitly argues that we should reject any requirement demanding the same objective evidentiary facts required in the preparation—attempt determination. We refuse to follow that suggestion.

■ When the defendant sells a substance which is actually heroin, it is reasonable to infer that he knew the physical nature of the substance, and to place on him the burden of dispelling that in-

ference. *United States v. Moser,* 7 Cir. 1975, 509 F.2d 1089, 1092; *United States v. Joly,* 2 Cir. 1974, 493 F.2d 672, 676.[10] However, if we convict the defendant of attempting to sell heroin for the sale of a non-narcotic substance, we eliminate an objective element that has major evidentiary significance and we increase the risk of mistaken conclusions that the defendant believed the goods were narcotics.[11]

■ Thus, we demand that in order for a defendant to be guilty of a criminal attempt, the objective acts performed, without any reliance on the accompanying *mens rea,* mark the defendant's conduct as criminal in nature. The acts should be unique rather than so commonplace that they are engaged in by persons not in violation of the law.

Here we have only two objective facts. First, Oviedo told the agent that the substance he was selling was heroin, and second, portions of the substance were concealed in a television set. If another objective fact were present, if the substance were heroin, we would have a strong objective basis for the determination of criminal intent and conduct consistent and supportive of that intent. The test set out above would be met, and, absent a delivery, the criminal attempt would be established. But when this objective basis for the determination of intent is removed, when the substance is not heroin, the conduct becomes ambivalent, and we are left with a sufficiency-of-the-evidence determination of in-

10. A similar inference obtains when possession is established, but the defendant contends that he did not know of the presence of the controlled substance. *See, e. g., U. S. v. Squella-Avendano,* 5 Cir. 1973, 478 F.2d 433, 438; *U. S. v. Dixon,* 9 Cir. 1972, 460 F.2d 309; *U. S. v. Hood,* 9 Cir. 1974, 493 F.2d 677, 681.

11. Enker, Impossibility in Criminal Attempts—Legality and the Legal Process, 53 Minn.L.R. 665, 680 (1969).

Mens rea is within one's control but, as already seen, it is not subject to direct proof. More importantly, perhaps, it is not subject to direct refutation either. It is the subject of inference and speculation. The act re-

quirement with its relative fixedness, its greater visibility and difficulty of fabrication, serves to provide additional security and predictability by limiting the scope of the criminal law to those who have engaged in conduct that is itself objectively forbidden and objectively verifiable. Security from officially imposed harm comes now only from the knowledge that one's thoughts are pure but that one's acts are similarly pure. So long as a citizen does not engage in forbidden conduct, he has little need to worry about possible erroneous official conclusions about his guilty mind.
*Id.* at 688.

tent rejected in the preparation—attempt dichotomy. We cannot conclude that the objective acts of Oviedo apart from any indirect evidence of intent mark his conduct as criminal in nature. Rather, those acts are consistent with a noncriminal enterprise. Therefore, we will not allow the jury's determination of Oviedo's intent to form the sole basis of a criminal offense.

The government also argues that *United States v. Mandujano, supra,* although involving a preparation—attempt determination, compels a contrary result. In *Mandujano,* the defendant negotiated a sale of heroin with an undercover agent. After taking the agent's money, the defendant set about to find his source. He was unsuccessful, and returned a few hours later with the money and without the heroin. We found the evidence sufficient to take the case beyond preparation, and to support his conviction for attempted distribution.

In making that determination, we recognized that in order to be guilty of an attempt, the objective conduct of the defendant must strongly corroborate the firmness of the defendant's criminal intent. *Id.* at 376. The objective acts must not be equivocal in nature. In that case, we had as objective facts defendant's act of taking money and his personal statements that he would purchase heroin with that money. Importantly, there were no objective facts which made these acts equivocal.

The situation in *Mandujano* is distinguishable from that now before us. Just as it is reasonable to infer a person's knowledge and criminal intent from the possession of a substance which is in fact narcotics, *United States v. Moser, supra* ; *United States v. Joly, supra,* it is also reasonable to infer that same knowledge and intent from an individual's statements of future intention. *Mutual Life Ins. Co. v. Hillmon,* 1892, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706; *Shurman v. United States,* 5 Cir. 1955, 219 F.2d 282, 290, fn. 9; *United States v. Hoffa,* 6 Cir. 1965, 349 F.2d 20, 45; *United States v. Annunziato,* 2 Cir. 1961, 293 F.2d 373, 377. However, just as it is impossible to infer that intent when the substance possessed is not in fact narcotics, it is also impossible to infer that intent when objective facts indicate that the person did not carry out his self-proclaimed intention.

Thus, when Mandujano stated that he would purchase heroin, we could infer that he intended to purchase heroin since there were no objective facts to the contrary. But here, Oviedo stated he would sell heroin and then sold procaine. Based on these objective facts, we cannot infer that he intended to do that which he said he was going to do, because he in fact did something else.

Reversed.