UNITED STATES of America

v.

Anthony Andrew CRAFT.

Crim. No. 76–87–1.

United States District Court,
M. D. Pennsylvania.

Sept. 28, 1976.

As Amended Nov. 1, 1976.

Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., for United States.

Clifford A. Rieders, Williamsport, Pa., for Craft.

OPINION

MUIR, District Judge.

On August 20, 1976, Craft, an inmate at the United States Penitentiary in Lewisburg, Pennsylvania, was found guilty of violating 18 U.S.C. § 1791 which, along with its related regulation, 28 C.F.R. § 6.1, makes it unlawful to send or attempt to send anything from a federal prison with-

out the knowledge and consent of the Warden. Co-Defendant Fleisher, the former librarian at Lewisburg, was acquitted of an identical charge. Currently before the Court are Craft's motions for arrest of judgment, for acquittal and for a new trial.

■ A motion for arrest of judgment can only be based on an insufficient indictment or the Court's lack of jurisdiction. F.R. Cr.P. 34. Since Craft does not challenge the validity of the indictment or the Court's jurisdiction, his motion for arrest of judgment will be denied.

■ The only argument advanced by Craft in support of his motion to overturn the conviction is one which, if accepted by the Court, would render a conviction impossible. Thus, since there would be no necessity for a new trial, Craft's motion for a new trial is supererogatory and will be denied.

Craft's only remaining motion is for judgment of acquittal. F.R.Crim.P. 29. Viewed in the light most consistent with the jury's verdict, the following are the facts relevant to this case:

Sometime prior to the afternoon of May 7, 1976, Craft composed a letter setting forth instructions for the introduction of drugs into the Lewisburg Penitentiary and containing, *inter alia,* the statement, "First let me say this letter is not being sent through regular channels. . . ." The envelope for this letter was addressed to a Shirley Wilson but did not bear the name or number of the sending inmate. It was given to Librarian Fleisher who carried it to the mailroom along with other letters he had personally prepared for posting and ran it through the cancelling machine. Mailroom supervisor Leon Poploski was seated at his desk nearby and had indicated to Fleisher how the machine could be operated. Fleisher placed the letter on the cancelling machine and departed. Later, Poploski, whose curiosity was aroused by the absence of a return name and number, inspected the letter and discovered its contents. He attempted to reach his superiors to request instructions but could not do so

because it was very late in the day, a Friday. He concluded that if he delayed posting the letter until Monday or confiscated it, the suspicions of the addressee and possibly the anonymous sender would be aroused. He then made photocopies and posted the original with the rest of that day's mail. Shirley Wilson testified that she destroyed the letter in anger soon after its receipt. The copies made by Poploski were admitted into evidence.

A crucial element of the substantive crime created by § 1791 and its related regulation, 28 C.F.R. § 6.1, is that the object in question be sent from the institution "without the knowledge and consent of the Warden." The Court is of the view that mailroom supervisor Poploski, despite his awareness that the contents of Craft's letter constituted contraband, acted within his authority as an agent of the Warden in sending the original to Shirley Wilson. Consequently, the jury was instructed that since the letter was actually mailed with the knowledge and consent of the Warden, the substantive crime created by § 1791 was not committed. However, the Court did charge that the Defendants could be found guilty of an attempt if the jury was convinced beyond a reasonable doubt that there was an intent to send the letter without authorization and that a direct, substantial but ineffectual act towards the commission of the crime was done. Craft contends that, under the circumstances of this case, this charge on attempt was erroneous and no basis exists for his conviction.

Looming largely over this case is the shadow of *U. S. v. Berrigan,* 482 F.2d 171 (3d Cir. 1973). In *Berrigan,* Counts V through X similarly charged the eponymic defendant and co-defendant McAlister with attempts to smuggle letters in and out of the Lewisburg Penitentiary without the knowledge and consent of the Warden. Berrigan would deliver letters to an inmate named Douglas, who, while participating in a study-release program at Bucknell University, would transport the letters out of the prison for forwarding to McAlister. He also carried letters from McAlister into the

prison. With respect to all the letters covered by Counts V through X, Douglas had turned informer and alerted prison officials, who, as a result, had complete, prior knowledge of each occurrence. At 184, n. 7. The guilty verdicts returned against Berrigan and McAlister on Counts V through X were overturned by the Court of Appeals which reasoned that attempts to commit crimes, which, by virtue of the Warden's prior knowledge of the activity, were not possible of accomplishment, could not serve as bases for convictions.

The analysis of *Berrigan's* application to this case must begin with the following quote:

> "Here, we are faced with a third situation where there is a motivation, desire and expectation of sending a letter without the knowledge and consent, [of the Warden] and the intended act is performed, but unknown to the sender, the transmittal is accomplished with the knowledge and consent of the warden." At 188–189.

Craft's activities fit squarely within that statement. However, the Court is convinced that the Third Circuit did not envision the present situation when it composed this all-encompassing synopsis of the limited circumstances with which it was confronted and, therefore, declines to view that isolated statement as a *ratio decidendi* of *Berrigan* which is binding in this quite different factual situation. An analysis of the entire section of *Berrigan* which deals with "impossibility" as a defense to attempt, leads to the conclusion that a different result is mandated in this case.

█ Craft's argument that his attempt to smuggle a letter from Lewisburg was, like Berrigan's, "impossible" because it had the consent of the Warden overlooks what the Court views as a crucial factual distinction. From the moment that Berrigan initiated his attempts to smuggle letters out of Lewisburg he could not, despite his intention to do so, violate § 1791 because his smuggling endeavors were sterilized by the Warden's prior knowledge. In contrast, Craft's deeds were tainted *ab initio* with a patina of criminality which persisted until the instant when Poploski decided to mail the original letter while retaining copies. Just prior to Poploski's intervention, the crime of attempt was not only legally possible, it was legally completed. In contrast to *Berrigan,* the Warden was never privy to any of the acts which constituted Craft's attempt. Failure to consummate the ultimate crime did not vitiate the fact that Craft had committed the separate, culpable offense of attempt. What Poploski did after the attempt was uncovered is irrelevant and does not decriminalize the Defendant's acts. If the Government's proof in the case had terminated chronologically with Poploski's discovery, the prosecution would have adduced a sufficient case to sustain a conviction against Craft. The mailing of the letter by Poploski, although precluding a conviction for smuggling, did not retroactively dissolve the distinct crime of attempt committed by Craft.

The Court is of the view that the circumstances of this case are legally identical to and, therefore, should have the same consequences as the situation where Poploski, rather than photocopying and mailing the original, retains it and Craft is indicted solely for an attempt to smuggle. There, too, an essential element of a substantive violation of § 1791 would be missing—transmittal of the letter without the knowledge and consent of the Warden. However, a punishable attempt to smuggle would have unquestionably been committed because the intended physical result was possible and was, when the letter was set in motion, illegal. Cf. *U. S. v. Oviedo,* 525 F.2d 881 (5 Cir., 1976). Likewise, when Craft drafted his letter and turned it over to the intermediary inmate, his intention to smuggle the letter was possible and illegal. His acts were criminal and punishable regardless of what occurred thereafter. Poploski's "approval" of the letter came after the crime of attempt was an irreversible *fait accompli.* Berrigan's attempt, on the other hand, never attained a level of criminality because he never set in motion a process which could eventuate in an unlawful act.

The interpretation of *Berrigan* urged by Craft effectively eliminates the Congressionally mandated crime of attempt. *Berrigan* cannot mean that whenever the substantive crime is aborted, there can be no conviction for attempt. Such a result, which, in my view, is contrary to logic and public policy, must be reached unequivocally by the Court of Appeals, not by a district court in reliance on uncertain and inapposite precedent.

Additionally, it is to be noted that, in terms of the jargon which is used in cases of this type, the Court views this situation as one of "factual impossibility" rather than "legal impossibility". Unlike the legally impossible attempt to bribe a juror when the venal individual is not a juror, see *Berrigan* at n. 20, this case is analogous to the factually impossible attempt to pick a pocket which has just been rendered empty by a faulty seam thereby frustrating the completion of the crime. Such an analysis of this case further distinguishes it from *Berrigan* which explicitly dealt with "legal impossibility" while intimating no opinion with respect to "factual impossibility" as a defense to attempt. At 190.

In light of the foregoing, Craft's motion for a judgment of acquittal will be denied.

An appropriate order will be entered.