UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert B. FLETCHER, a/k/a Fletch,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Darryl BLALOCK, a/k/a Mookie,
Defendant–Appellant.

Nos. 89–5814, 89–5823.

United States Court of Appeals,
Fourth Circuit.

Argued April 10, 1991.

Decided Sept. 12, 1991.

As Amended Oct. 23, 1991.

Stephen J. Kleeman, Stephen J. Kleeman Law Offices, Baltimore, Md., argued, for defendant-appellant Blalock.

Kenneth David Auerbach, Auerbach & Deutch, Silver Spring, Md., argued, for defendant-appellant Fletcher.

Ethan L. Bauman, Asst. U.S. Atty., Baltimore, Md., argued (Breckinridge L. Willcox, U.S. Atty., E. Thomas Roberts, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before WIDENER, PHILLIPS and HAMILTON, Circuit Judges.

## OPINION

WIDENER, Circuit Judge:

Robert Fletcher and Darryl Blalock were jointly charged with conspiracy to distribute and to possess with intent to distribute phencyclidine (PCP) (21 U.S.C. § 846); two counts of distribution of PCP (21 U.S.C. § 841(a)(1)); attempted distribution of PCP (21 U.S.C. § 846); and employment of a person under the age of eighteen to commit an offense under 21 U.S.C. § 846 (21 U.S.C. § 845b).[1] Blalock was convicted on all counts. Robert Fletcher was convicted of attempted distribution of PCP (21 U.S.C. § 846) and employment of a person under the age of eighteen to commit an offense under 21 U.S.C. § 846 (21 U.S.C. § 845b). The two were sentenced pursuant to the United States Sentencing Guidelines. Fletcher was sentenced to 151 months of imprisonment to be followed by 10 years of supervised release. Blalock was sentenced to 360 months of imprisonment to be followed by 10 years of supervised release.

The record reveals that Darryl Blalock was the leader of a large scale operation that distributed PCP in the Washington, D.C. metropolitan area. Under Blalock's direction, PCP was brought from California in five gallon cans, stored at various locations, broken down into smaller portions, and then distributed. Blalock recruited co-defendants Robert Fletcher, Darris Hamlin, and Donald Harley to aid in this endeavor, and, on one occasion, utilized the services of Eric Hinton, aged fourteen years, and Chris Dreher, apparently also a minor, in the drug trade.[2]

These activities came to light during an investigation by Drug Enforcement Administration agents. During this investigation, controlled buys of PCP were made from Blalock and his confederates. As a result of the information gained in the investigation and controlled buys, Blalock, Fletcher, Harley, and Hamlin were arrested. Pursuant to plea agreements, Harley and Hamlin pleaded guilty to the conspiracy to distribute count and gave testimony at Blalock and Fletcher's trial. Following that trial Blalock and Fletcher were convicted as indicated above. Now, Blalock and Fletcher appeal their convictions.

Blalock and Fletcher's principal arguments concern their convictions for attempted distribution of PCP, under 21 U.S.C. § 846, and use of a minor to violate the drug laws, under 21 U.S.C. § 845b. We will recount that evidence in some detail.

During July and August of 1988, a government informant had several phone conversations with Darris Hamlin, who was holding Blalock's pager while Blalock was out of town, and later, with Blalock himself, in an attempt to purchase PCP. Through these conversations, which were recorded by special agents, Blalock indicated that he would endeavor to locate some of the drug.

1. Blalock and Fletcher were indicted under 21 U.S.C. § 845b. That section has since been reclassified without significant change to 21 U.S.C. § 861.

2. Fletcher argues that there was insufficient evidence of Dreher's age at trial. However, we need not consider that point. Fletcher was specifically charged with use of a fourteen year old in the commission of a drug offense, and the instructions to the jury reflect that fact. The jury's conclusion that Hinton was fourteen years of age when Fletcher used him to commit a drug offense is supported by the record.

On August 30, 1988, the informant again phoned Blalock, who was located at the P & P Auto Body Shop, and requested that Blalock provide him with one-half gallon of PCP. Blalock indicated that he had the requested quantity already bottled up and that he would have it delivered to the Iverson Mall gas station. The parties agreed upon a price of $4,000.

Blalock made several calls over a mobile phone to arrange the deal, and then met with Robert Fletcher. Acting under Blalock's instructions, Fletcher drove to Blalock's home where he picked up Blalock's 14 year old brother, Eric Hinton, and Chris Dreher, also a minor. The three then travelled to the home of Robert Bowman where Fletcher picked up a quantity of purported PCP. Fletcher then drove to the Iverson Mall gas station where special agent Adams, acting in an undercover capacity, was awaiting the delivery. After signalling to Adams, Fletcher got out of his car, walked over to Adam's car, and placed several bottles,[3] enclosed in a white bag, on the front seat. He told agent Adams to "be careful driving with that stuff." In return, agent Adams handed Fletcher $4,000 in marked money and asked him to count it. Fletcher said that counting was not necessary because he trusted her, and quickly took the money back to his vehicle where the two juveniles remained.

Upon leaving the station, Fletcher observed the surveillance agents following him. Fletcher attempted to elude the agents and a high speed chase ensued. At one point, Fletcher stopped the car, gave Dreher the sale proceeds, and told Hinton and Dreher to exit the vehicle. The boys were pursued by special agents who eventually overtook them and recovered the $4,000 given to Fletcher by agent Adams. Fletcher managed to elude the agents but later was observed returning to the P & P Auto Body Shop wearing different clothing.

■ Blalock and Fletcher first contend that the evidence was insufficient as a matter of law to support their convictions for attempted distribution of PCP on August 30, 1988 in violation of 21 U.S.C. § 846. They rely on *United States v. Oviedo*, 525 F.2d 881 (5th Cir.1976) in which it was held, on the facts in that case, that the agreement to sell white powder thought to be, but not, cocaine was not an attempt to sell cocaine. However, *Oviedo* is a different case. In *Oviedo*, there was little evidence to show that the defendant intended to distribute a controlled substance, so the court assumed that fact. The court, nevertheless, based its holding on the fact that the attempted delivery of the white powder, not cocaine, was "ambivalent." Unlike *Oviedo*, in the instant case there is ample evidence to support the jury's conclusion that Blalock and Fletcher were attempting to distribute PCP. These acts do not make sense in another context. There is no ambivalence. Blalock sold PCP to agent Adams on a previous occasion. When making the August 30 delivery, Fletcher told agent Adams to "be careful driving with that stuff" and then attempted to elude surveillance officers after the delivery. Testimony by other witnesses established that Fletcher admitted that he thought he had given PCP to the agent but that he was safe because he had gone home and changed his clothes. A search warrant executed at the home where Fletcher obtained the purported PCP produced containers containing PCP and a substance that looked and smelled like PCP. And finally, expert witness agent Grubbs testified that it was not unusual for drug dealers to be supplied with a bad batch of PCP that would smell and look like PCP. We also find persuasive *United States v. Pennell*, 737 F.2d 521 (6th Cir.1984), *cert. denied sub. nom.*, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985), which affirmed a conviction for attempted possession of cocaine with intent to distribute in a reverse sting operation although the cocaine involved was sham cocaine and not genuine. The court stated at p. 525 that it agreed with the Third Circuit's analysis and concluded that Congress intended to

---

**3.** The bottles contained a liquid that smelled and looked like PCP but which was later analyzed by DEA chemists and found not to contain any controlled substance.

eliminate the impossibility defense in cases prosecuted under 21 U.S.C. §§ 841(a)(1) and 846. Thus, the purchase by Pennell of the white powdery substance from the government agent, which Pennell believed to be cocaine, was sufficient to constitute an attempt. We see no significant difference between *Pennell* and our case. So, under either *Oviedo* or *Pennell*, the evidence here supports the conviction. Our case, indeed, is stronger than *Pennell*, for everyone connected with this sale believed the PCP to be genuine.

 Blalock and Fletcher next argue that this evidence was insufficient to support their convictions for employment of a minor to violate the drug laws under 21 U.S.C. § 845b. Viewed in the light most favorable to the government the facts presented above provide ample support for the jury's conclusion as to Fletcher's violation of 21 U.S.C. § 845b. However, we are of opinion that the government did not present sufficient evidence to also convict Blalock of that charge.

In order to have convicted Blalock under 21 U.S.C. § 845b, of employing or using a minor to violate the drug laws, the government must have shown, beyond a reasonable doubt, that he was "at least eighteen years of age" when he "knowingly and intentionally [used] a person under eighteen years of age to violate [the drug laws]." 21 U.S.C. § 845b (Supp.1989). However, the government presented no evidence from which the jury could have concluded that Blalock was, in fact, at least eighteen years of age at the time of the offense. At best, the government's evidence on this point established that Blalock was eighteen at the time of his trial. Thus, even though we view the evidence in the light most favorable to the government, we are unable to say that the government has carried its burden of proof to convict Blalock of violating 21 U.S.C. § 845b. Accordingly, we reverse Blalock's conviction under 21 U.S.C. § 845b.

We find no merit in Blalock and Fletcher's additional claims that they were improperly denied a severance, nor in their claim that the district court committed reversible error in its instructions to the jury.

 Blalock makes certain objections with respect to the enhancement of his sentence for various reasons. The order sentencing Blalock does not distinguish any parts of his sentence awarded for the various crimes for which he was convicted in this case. We have reversed Blalock's conviction for employing the two minors to violate the narcotics laws and have no way to ascertain what Blalock's sentence would have been had the district court sentenced him for other convictions but not for the count of employing minors to violate the narcotics laws. We, therefore, express no opinion on any of Blalock's claimed errors with respect to his sentence, but vacate the sentence and remand his case to the district court for resentencing, following which Blalock may again appeal his sentence should he be so advised.

In No. 89–5814, *United States v. Fletcher*, the judgment of the district court is

AFFIRMED.

In No. 89–5823, *United States v. Blalock*, the judgment of the district court with respect to Blalock's conviction on count 5 of the indictment, employing minors to violate the narcotics laws, the judgment of conviction of the district court is

REVERSED.

In No. 89–5823, *United States v. Blalock*, the judgment of conviction on all counts in the indictment except count 5 is

AFFIRMED.

In No. 89–5823, *United States v. Blalock*, Blalock's sentence is

VACATED AND REMANDED WITH INSTRUCTIONS.