**UNITED STATES of America**

v.

**Darryl Leon BLALOCK.**

**Criminal No. JFM–88–0305.**

United States District Court,
D. Maryland.

Dec. 28, 1998.

Lynne A. Battaglia, United States Attorney for the District of Maryland, John F. Purcell, Jr., Assistant United States Attorney, Baltimore, MD, for the Government.

Darryl Blalock, pro se.

*MEMORANDUM*

MALETZ, Senior Judge.[1]

Darryl Blalock has filed a motion to reduce or modify his sentence pursuant to 18 U.S.C. § 3582(c)(2). Blalock contends that his sentence should be reduced to reflect the retroactive purpose of Amendment 484 of the United States Sentencing Guidelines. He argues that, in light of the amendment, the amount of drugs attributed to him during sentencing was erroneous and such amount should be reduced in accordance with the amendment. For the following reasons the court denies his motion.

I.

On April 19, 1989 after a jury trial before then United States District Judge Paul V. Niemeyer, Blalock was convicted of conspiracy to distribute PCP, in violation of 21 U.S.C. § 841; two counts of distribution of PCP in violation of 21 U.S.C. § 846; one count of attempted distribution of PCP in violation of 21 U.S.C. § 846 and; one count of employment of a person under the age of eighteen to commit a drug trafficking offense in violation of 21 U.S.C. § 845(b). He was sentenced on November 27, 1989 by Judge Maletz to 360 months imprisonment followed by ten years of supervised release.

1. Of the United States Court of International Trade, sitting by designation.

Blalock filed an appeal and the Fourth Circuit affirmed all but the conviction for employing a minor to commit a drug trafficking offense. *See United States v. Fletcher,* 945 F.2d 725 (4th Cir.1991). The Court reversed the conviction holding that there was insufficient evidence to indicate that Blalock was eighteen at the time he employed the minors [2], and the case was remanded back to the district court for resentencing. *See id.* On December 6, 1991, Blalock's sentence was reduced to 235 months. He then took a second appeal challenging two sentencing enhancements that were imposed for taking a leadership role in the offense and for obstruction of justice. However, the Fourth Circuit upheld the 235 month sentence. *See United States v. Blalock,* 1993 WL 238991, 996 F.2d 1212 (4th Cir.1993)(unpublished).

## II.

Blalock contends that the substance he was convicted of possessing and distributing contained a significant amount of "waste water" that should not have been counted in calculating his offense level. The sentencing guideline which establishes the base offense level for drug possession offenses, § 2D1.1, has been altered by Amendment 484. The amended section reads as follows:

> 'Mixture or substance' as used in this guideline has the same meaning as in 21 U.S.C. § 841, except as expressly provided. *Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used.* Examples of such materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statute, and waste water from an illicit laboratory used to manufacture a controlled substance...

*See* U.S.S.G. § 2D1.1 n. 1 (emphasis added). The language of this amendment clearly refers to substances which "must be separated from the controlled substance before the controlled substance can be used." *See id.* Therefore, the question before this court is whether the liquid that was combined with the PCP was of such a nature that the PCP was not consumable until such liquid was

removed. If it was not necessary to remove the liquid prior to consumption of the drug, then the substance Blalock possessed and distributed is in fact a "mixture" as defined by 21 U.S.C. § 841 and does not fall within the exception carved out in Amendment 484.

In an addendum to his motion for resentencing, Blalock maintains that due to the highly flammable nature of liquid PCP, a neutralizer was added to the PCP to prevent the drug from exploding during shipment. He argues that the neutralizer is solely used for shipping the drug and in no way increases the drug's marketability. Furthermore, he claims that the neutralizer "had to be removed from the PCP in order to make it usable." He goes on to say that, "Due to the neutralizer's strength, the neutralizer ruined the purity of the drug and in most instances completely ruined the drug altogether."

The court finds Blalock's statements concerning the neutralizer to be a self-serving attempt to manipulate his situation to conform to the text of the amendment. There is no evidence in the record to suggest that Blalock took any measures to remove this "neutralizer" from the mixture prior to selling the drugs on the street. Additionally, there is no evidence that Blalock made use of any lab or other device to aid in the removal of the "neutralizer". In fact, there was testimony at trial that the drugs were transported in gasoline cans, and the contents of such cans were poured into smaller containers, such as soda bottles, and those smaller bottles were then sold on the street. There is absolutely no evidence, aside from Blalock's own assertions, that the drug was unable to be used in its current form.

As the government has indicated in its brief, PCP is regularly consumed in a liquid form by spraying it on marijuana or tobacco cigarettes. *See United States v. Coburn,* 881 F.2d 1070 (4th Cir.1989)(unpublished). The court finds that the drug was consumable in this liquid form and that it was not necessary for the additives present in the mixture to be removed prior to consumption.

---

**2.** An element of the offense of employing minors in drug trafficking is that the "employer" be at least eighteen years of age at the time of the offense. *See* 21 U.S.C. § 845(b).

Against this factual background, the law is clear. The Supreme Court has held that a "mixture" for the purposes of 21 U.S.C. § 841(b) can be "two substances blended together so that the particles of one are diffused among the particles of another." *See Chapman v. United States,* 500 U.S. 453, 462, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). The Court went on to state that Congress "intended the penalties for drug trafficking to be graduated according to the weight of the drugs in whatever form they were found—cut or uncut, pure or impure, ready for wholesale or ready for distribution at the retail level." *See id.* 500 U.S. at 461, 111 S.Ct. 1919. As noted in *Chapman,* the guidelines recognize that controlled substances are commonly mixed with some other substance that dilutes their purity. The guidelines require that "in the case of a mixture or substance containing PCP...use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the PCP (actual)...whichever is greater." *See* U.S.S.G. § 2D1.1 n.(B). Therefore, unless the PCP was contained in a substance similar to those described in Amendment 484, and the drug could not have been used unless removed from said substance, Amendment 484 is not applicable.

The court holds that the drug was capable of being consumed in spite of its presence in a liquid mixture thus, Amendment 484 does not apply.

For the foregoing reasons the motion is denied.