Stanley DOE ("S.D."), Appellant.

No. 01–SP–894.

District of Columbia Court of Appeals.

Argued Nov. 7, 2002.
Decided July 29, 2004.

---

Andrea Roth, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the briefs, for appellants.

Barbara J. Valliere, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, at the time the brief was filed, and John R. Fisher and Elizabeth Trosman, Assistant United States Attorneys, were on the briefs, for appellee.

Before WAGNER, Chief Judge, and TERRY and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

Appellant "Stanley Doe" (a pseudonym employed in the trial court proceedings), whom we shall refer to as "S.D." though his actual initials are different, entered a guilty plea in federal court to one count of Interstate Travel with Intent to Engage in Sexual Acts with a Minor, a violation of 18 U.S.C. § 2423(b). After S.D. served time in prison and was placed on supervised release, he moved to the District of Columbia. The Court Services and Offender Supervision Agency ("CSOSA") notified S.D. that he had to register as a sex offender under the District of Columbia's Sex Offender Registration Act of 1999 ("SORA"), D.C.Code § 22–4001, et seq. (2001).[1] Al-

---

1. We sustained the constitutionality of SORA in *In re W.M.*, 851 A.2d 431 (D.C. 2004).

leging that his federal crime was not a "registration offense" under SORA, S.D. sought judicial review of CSOSA's determination in Superior Court. *See* D.C.Code § 22–4004(a)(1)(A)(iv). CSOSA argued that S.D. was obliged to register because his federal offense involved conduct that was "substantially similar" to at least two registration offenses under District of Columbia law, namely, attempted enticement of a child in violation of D.C.Code §§ 22–3010,—3018 (2001), and lewd, indecent or obscene acts with a child in violation of D.C.Code § 22–1312(b) (2001). The Superior Court agreed with CSOSA and certified S.D. as a Class B sex offender subject to SORA's ten-year registration requirement. S.D. appealed that ruling to this Court. We now affirm it.

### I.

S.D. stipulated to the facts underlying his federal offense when he tendered his guilty plea. In brief, on October 30, 1998, S.D. (who was approximately forty years old) traveled from Kansas to Virginia for the purpose of engaging in sexual acts with minors he had solicited in Internet chat rooms and by e-mail. After he arrived in Virginia, S.D. met first with "Jane Doe," a seventeen-year-old girl. With knowledge that Jane Doe was under eighteen years of age, S.D. drove her to a residence in Alexandria and had sexual intercourse with her there. The following morning, S.D. went to a shopping mall in Pentagon City for a rendezvous with "Ashley5665," whom he believed to be a fourteen-year-old girl. Upon his arrival at the mall, S.D. was arrested. In reality, Ashley5665 had been the screen name used by a United States Customs Service Special Agent posing as a fourteen-year-old girl in an FBI undercover sting operation.[2]

S.D. pleaded guilty in the United States District Court for the Eastern District of Virginia to a single count of having violated 18 U.S.C. § 2423(b) by traveling in interstate commerce for the purpose of engaging in a sexual act with a person under eighteen years of age. S.D. specifically acknowledged in his stipulation that he engaged in the above-described conduct "knowingly, intentionally and unlawfully and not as a result of mistake, inadvertence or other innocent reason." The court sentenced S.D. to fifteen months in prison followed by two years of supervised release.

### II.

The sole question that S.D. asks us to answer in this appeal is whether his federal offense is one that requires registration under SORA. This is a question of statutory interpretation, and hence our review is *de novo*. *See, e.g., Harris v. District of Columbia Office of Worker's Compensation (DOES)*, 660 A.2d 404, 407 (D.C. 1995). SORA was adopted to protect the public, and especially minors, from the threat of recidivism posed by sex offenders who have been released into the community. *See W.M.*, 851 A.2d at 441–42. As SORA is a remedial regulatory enactment and not a penal law, *see id.*, at 443–46, it "should be liberally construed for the benefit of the class it is intended to protect." *Maldonado v. Maldonado*, 631 A.2d 40, 42 (D.C.1993). Additionally, while "the judiciary is the final authority on issues of statutory construction," *Harris*, 660 A.2d at 407 (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*

---

**2.** We see no reason to quote S.D.'s instant messages and e-mails to Ashley5665 in this opinion. Suffice it to say that their content was sexually explicit and salacious and that they leave no doubt that S.D. thought he was enticing a fourteen-year-old girl to have sex with him.

467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)), to the extent that the meaning of SORA's terms is unclear, "the court will accord considerable weight to [the] construction by the agency responsible for administering the statute." *Id.* The agency responsible for administering SORA's registration and classification requirements is CSOSA. *See* D.C.Code §§ 22–4002, –4007. Where language in SORA is ambiguous, therefore, CSOSA's interpretation is entitled to deference so long as it is reasonable in light of the statute's language, its legislative history, and judicial precedent. *See Wash. Metro. Transit Auth. v. District of Columbia Dep't of Employment Servs.*, 825 A.2d 292, 294 (D.C.2003); *cf. W.M.*, at 454–55 (declining to defer to CSOSA's non-adjudicative *factual* determinations).

■ "SORA imposes registration requirements on sex offenders based on the nature of the offenses they committed rather than on an individualized assessment of their risk of recidivism." *W.M.*, at 436. To that end, SORA contains provisions defining the terms "lifetime registration offense" and "registration offense." *See* D.C.Code § 22–4001(6) & (8). The most serious sex offenses, typically those involving either violence or the abuse of children under twelve years of age, are included in the former category; persons who have "committed" those offenses have a duty to register as sex offenders for life. Offenders who have "committed" other registration offenses[3] must register for ten years or until the end of any period of probation, parole, supervised or conditional release, or convalescent leave, whichever is later. D.C.Code § 22–4002(a). SORA defines the phrase "committed a registration offense" narrowly to mean that the person was convicted of such an offense or was found not guilty of it by reason of insanity, or else was determined in a special judicial proceeding to be a sexual psychopath. D.C.Code § 22–4001(3)(A).

The issue before us is whether S.D. committed a ten-year registration offense; it is not contended that he committed a lifetime registration offense. In D.C.Code § 22–4001(8), SORA specifically lists many D.C.Code sex offenses as registration offenses, including all sex offenses involving minors (unless they are listed in § 22–4001(6) as lifetime registration offenses). In subparagraph (G) of § 22–4001(8), SORA further provides that an offense under the law of another jurisdiction, including federal law, is a registration offense in the District of Columbia if the offense "involved conduct that would constitute" a D.C.Code registration offense or "substantially similar" conduct. D.C.Code § 22–4001(8)(G).[4] (A nearly identical pro-

---

3. Not all sex offenses are covered by SORA. Generally speaking, sex offenses that are non-assaultive in nature and do not involve minors or other specially protected persons (wards, patients, clients) are not registration offenses. As used in SORA, the term "minor" means "a person under 18 years of age." D.C.Code § 22–4001(7).

4. For ease of reference, the full statutory definition of a "registration offense" is as follows:
    (8) "Registration offense" means:
    (A) An offense under Chapter 30 ["Sexual Abuse"] of this title;
    (B) Forcible rape, carnal knowledge or statutory rape as these offenses were pro-

scribed until May 23, 1995 by § 22–4801; indecent acts with children as this offense was proscribed until May 23, 1995 by § 22–3801(a); enticing a child as this offense was proscribed until May 23, 1995 by § 22–3801(b); or sodomy as this offense was proscribed until May 23, 1995 by § 22–3802(a) where the offense was forcible or committed against a minor;
    (C) Any of the following offenses where the victim is a minor: acts proscribed by § 22–1312 (lewd, indecent, or obscene acts), acts proscribed by § 22–2201 (obscenity), acts proscribed by § 22–3102 (sexual performances using minors), acts

vision for lifetime registration offenses appears in subparagraph (E) of § 22–4001(6).) Although the quoted terminology is not statutorily defined, it is clear that CSOSA properly may (and often must) look beyond the face of the judgment of conviction in another jurisdiction to the underlying offense conduct to determine whether the requirements of subparagraph (G) are met. *See also* D.C.Code 22–4004(a)(1)(A)(iv) (explicitly recognizing that the registration determination may be based on "a finding or findings which are not apparent from the disposition" in the foreign jurisdiction).

The legislative history of SORA is informative as to the scope of the term "substantially similar." The report submitted

to the Council by its Committee on the Judiciary, which is authoritative, *see W.M.,* at 441, explains that subparagraph (G) is designed to overcome difficulties caused by "[t]he variations among different jurisdictions in the terminology and categorizations used in defining sex offenses."[5] To that end, subparagraph (G) eschews "element-by-element comparisons" between offenses in D.C. and similar offenses elsewhere in favor of requiring persons in the District of Columbia to register so long as "they have been convicted under the laws of other jurisdictions of crimes involving sexual assault or crimes involving sexual abuse or sexual exploitation of children, or of *inchoate offenses that aimed at such conduct.*" Judiciary Committee Report at 21 (emphasis added).[6] Thus the Council

> proscribed by § 22–1901 (incest), acts proscribed by § 22–2001 (kidnapping), and acts proscribed by §§ 22–2701, 22–2703, and 22–2723 (prostitution; pandering);
>
> (D) Any offense under the District of Columbia Official Code that involved a sexual act or sexual contact without consent or with a minor, assaulting or threatening another with the intent to engage in a sexual act or sexual contact or with the intent to commit rape, or causing the death of another in the course of, before, or after engaging or attempting to engage in a sexual act or sexual contact or rape;
>
> (E) An attempt or a conspiracy to commit a crime, as proscribed by § 22–1803 or § 22–1805a which involved an attempt or conspiracy to commit an offense described in subparagraphs (A) through (D) of this paragraph, or assault with intent to commit rape, carnal knowledge, statutory rape, first degree sexual abuse, second degree sexual abuse, or child sexual abuse, as proscribed by § 22–401;
>
> (F) Assault with intent to commit any other crime, as proscribed by § 22–403, or kidnapping or burglary, as proscribed by § 22–801 or § 22–2001 where the offense involved an intent, attempt or conspiracy to commit an offense described in subparagraphs (A) through (D) of this paragraph;
>
> (G) An offense under the law of any state, under federal law, or under the law of any other jurisdiction, which involved conduct

> that would constitute an offense described in subparagraphs (A) through (F) of this paragraph if committed in the District of Columbia or prosecuted under the District of Columbia Official Code, or conduct which is substantially similar to that described in subparagraphs (A) through (F) of this paragraph; and
>
> (H) Any other offense where the offender agrees in a plea agreement to be subject to sex offender registration requirements.
>
> D.C.Code § 22–4001(8).

**5.** Council of the District of Columbia, Comm. on the Judiciary, Report on Bill 13–350, "The Sex Offender Registration Act of 1999," at 21 (1999) [hereinafter, "Judiciary Committee Report"].

**6.** The full explanation of subparagraph (G) in the Judiciary Committee Report is as follows:

> Subparagraph (G) in the definition covers offenses under the law of any state, under federal law or under the law of any other jurisdiction (including military law, Indian tribal law, or foreign law), which would constitute registration offenses (as otherwise defined) if committed in the District or prosecuted under the D.C.Code or which are substantially similar to such offenses. The variations among different jurisdictions in the terminology and categorizations used in defining sex offenses make element-by-

did not intend the term "substantially similar" to be construed narrowly or restrictively. Rather, the Council contemplated that the term would be given a broad construction to effectuate the goals of the legislation.

Turning now to S.D.'s federal offense, CSOSA and the Superior Court determined that the offense involved conduct that was "substantially similar" to the conduct described by at least two D.C.Code offenses that require registration: attempted enticement of a child in violation of D.C.Code §§ 22–3010 and 22–3018, and lewd, indecent or obscene acts with a child in violation of D.C.Code § 22–1312(b). We consider it necessary to examine only the comparison with the first of those two offenses. The offense of "enticing a child" is committed when a person, "being at least 4 years older than a child, takes that child to any place, or entices, allures, or persuades a child to go to any place for the purpose of committing" an act of sexual abuse (including sexual intercourse). D.C.Code § 22–3010. For purposes of this offense, a "child" is defined to be "a person who has not yet attained the age of 16 years." D.C.Code § 22–3001(3) (2001). An attempt to commit enticement of a child is an offense under D.C.Code § 22–3018.

S.D. committed his federal offense by traveling in interstate commerce for the specific purpose of meeting a fourteen-year-old girl and engaging her to have sex with him.[7] That is to say, S.D. intended upon arriving in Virginia to "entice, allure, or persuade" a "child" to go some place with him for sexual intercourse, and he performed a substantial action in furtherance of that goal by traveling from Kansas to the Pentagon City shopping mall to meet the child there.[8] Since these facts are undisputed, the similarity between S.D.'s federal offense and the District of Columbia offense of attempted enticement of a child is obvious and substantial. Certainly S.D.'s federal offense was of the type that the Judiciary Committee envisioned being covered by SORA—an "inchoate offense[ ] that aimed at" a crime involving sexual abuse of a child. Judiciary Committee Report at 21. Certainly, too, S.D.'s offense conduct marks him as being within the core class of persons—sex offenders seeking to prey on children—that SORA was enacted to reach.

S.D. advances reasons why his federal offense is not "substantially simi-

element comparisons difficult or impossible. Coverage of substantially similar offenses under subparagraph (G) largely obviates this problem and will make it possible to register consistently offenders who live, reside, work or attend school in the District of Columbia if they have been convicted under the laws of other jurisdictions of crimes involving sexual assault or crimes involving sexual abuse or sexual exploitation of children, or of inchoate offenses that aimed at such conduct.
Judiciary Committee Report at 21.

7. S.D. also traveled to Virginia for the purpose of engaging in sexual activity with "Jane Doe." Because "Jane Doe" was seventeen years old, she was not a "child" for purposes of the enticement statute, though she was a "minor" for purposes of SORA. We need not and do not decide whether a sex offense under the laws of another jurisdiction still may be substantially similar to attempted enticement if the victim is a "minor" but not a "child."

8. For purposes of our present analysis, we need not rely also on S.D.'s considerable email and instant message communications with "Ashley5665" that preceded his travel to Virginia. Although a number of those communications plainly constituted significant efforts in themselves to "entice, allure, or persuade," and were powerful evidence of S.D.'s intent, S.D. argues that they should not be considered because they were not, strictly speaking, part of the travel offense of which he was convicted. It is unnecessary to reach this argument.

lar" to the D.C. offense, but we find none of them persuasive. First, S.D. argues that it is "legally impossible" to commit the D.C. offense of attempted enticement of a child when, as in his federal offense, the intended victim is (unbeknownst to the perpetrator) not a child. This argument confuses "legal impossibility" with "factual impossibility." Legal impossibility as a defense to an attempt offense arises only when the defendant's objective is to do something that is not a crime. *See German v. United States*, 525 A.2d 596, 606 n. 20 (D.C.1987); *see also* 2 WAYNE R. LA-FAVE, SUBSTANTIVE CRIMINAL LAW § 11.5(a) (2d ed. 2003) [hereinafter LAFAVE]. That was not the case here. S.D.'s objective, to have sex with a child, was criminal. He made a substantial effort to achieve that criminal objective. As it turned out, S.D. unwittingly aimed his effort at the wrong target—since Ashley5665 was an undercover agent, it was factually impossible for S.D. to accomplish his objective with "her." But "factual impossibility, where the intended substantive crime is impossible of accomplishment merely because of some physical impossibility unknown to the defendant, is not a defense." LAFAVE, § 11.5(a), at 231; *accord, German*, 525 A.2d at 606 n. 20 (citing *United States v. Oviedo*, 525 F.2d 881, 883 (5th Cir.1976)). We have no reason to think that it would be a defense in the District of Columbia to

a charge of attempted enticement of a child that the defendant was fooled because his target was in reality an undercover law enforcement officer.[9] Whether the targeted victim is a child or an undercover agent, the defendant's conduct, intent, culpability, and dangerousness are all exactly the same. Hence "[t]he modern and better rule is that impossibility is not a defense [to a charge of criminal attempt] when the defendant's actual intent (not limited by the true facts unknown to him) was to do an act or bring about a result proscribed by law." LAFAVE, § 11.5, at 229.[10]

SORA does include an exemption for "[a]ny misdemeanor offense that involved a person's sexual touching or attempted or solicited sexual touching of an undercover law enforcement officer where the person believed that the officer was an adult." D.C.Code § 22–4016(b)(2). S.D. cannot take advantage of this exemption. Aside from the fact that his offense was no misdemeanor, S.D. did not believe that he was dealing with an adult. "The language of subsection (b)(2) was carefully chosen to ensure that persons who commit offenses in the course of undercover operations targeted at rapists or at pedophiles or other adults who attempt to engage in sexual relationships with children will still be re-

---

9. S.D.'s reliance on *Butler v. United States*, 481 A.2d 431, 444 (D.C.1984), for the proposition that factual impossibility may be a defense is misplaced, for *Butler* did not involve an attempt charge.

10. Thus, we agree with many commentators that the distinction between factual impossibility and legal impossibility is often elusive (though we think it not so on the facts of this case) and that it may be more useful simply to inquire whether a defendant had the requisite *mens rea* and performed substantial acts in furtherance of a criminal objective. This was essentially the view of the matter taken by the Fifth Circuit in *Oviedo*. Recognizing the diffi-

culty in distinguishing between legal and factual impossibility and the dangers of basing convictions solely on proof of criminal intent, the *Oviedo* court "demand[ed] that in order for a defendant to be guilty of a criminal attempt, the objective acts performed, without any reliance on the accompanying mens rea, mark the defendant's conduct as criminal in nature." 525 F.2d at 885. Whatever we may think of that precise formulation, the *Oviedo* court would doubtless find that such a standard of proof was met in S.D.'s case by the abundant evidence the government presented and to which S.D. stipulated.

quired to register." Judiciary Committee Report at 29.

S.D. next argues that 18 U.S.C. § 2423(b) is "not remotely analogous" to attempted enticement of a child under District of Columbia law because it "merely criminalizes the act of *crossing state lines* with a particular criminal intent, [while] the D.C. offenses criminalize completed or attempted *sexual acts* with a minor"; § 2423(b) thus "does not require proof of any overt act in furtherance of a sexual act with, or sexual proposal to, a minor," [*Id.* at 23] while an attempt crime under D.C. law is said to require such an overt act "which, except for some interference, would have resulted in the commission of the crime." *Wormsley v. United States*, 526 A.2d 1373, 1375 (D.C.1987).[11] According to S.D., his interstate travel to meet "Ashley5665" was merely in the nature of "preparatory behavior," and "[m]ere prep-

aration is not an attempt." *Sellers v. United States*, 131 A.2d 300, 301 (D.C. 1957).

The distinctions that S.D. identifies are not as sharp as they may seem;[12] more important, they are not significant in the context of SORA (or so CSOSA reasonably could conclude in construing the statutory requirement of "substantial" similarity). The Council sought to deemphasize such distinctions between the definitions of sex offenses in different jurisdictions in order to achieve the public safety goals of registration and community notification about sex offenders. In this area we are not to exalt form over substance. To require S.D. to register in the District of Columbia, it is enough that he was convicted in federal court of committing a substantial act to accomplish his intention to sexually abuse a child.[13]

11. Actually, as we have often noted, the formulation in *Wormsley* is imperfect. For instance, "failure is not an essential element of criminal attempt.... [A] person charged with an attempt to commit a crime may be convicted even though the evidence shows a completed offense, not merely an attempt." *Evans v. United States*, 779 A.2d 891, 894 (D.C.2001) (internal quotation marks and citations omitted). While this is not the case for it, the day may come when we reexamine and, perhaps, reformulate, the way we speak of the kind of "act" that is required for a criminal attempt. *See generally* LaFave, § 11.4 (describing different approaches). Under the formulation favored by the Model Penal Code and adopted in a number of jurisdictions, the act need be only "a substantial step in a course of conduct planned to culminate in [the actor's] commission of the crime." *Id.*, § 11.4(e) (quoting Model Penal Code § 5.01(1)(c)).

12. Mere preparation may not be an attempt, "but preparation may progress to the point of attempt. Whether it has is a question of degree which can only be resolved on the basis of the facts in each individual case." *Sellers*, 131 A.2d at 301. The line between preparation and attempt is often indistinct, especially in the area of attempted sexual abuse. Thus, courts in several other jurisdic-

tions, particularly but not exclusively those that have adopted the Model Penal Code "substantial step" approach to criminal attempts, have found criminal attempts to commit sexual assaults on the basis of conduct indistinguishable from that of S.D. here. *See, e.g., Van Bell v. State*, 105 Nev. 352, 775 P.2d 1273, 1275 (1989) ("Given the unequivocal evidence of appellant's intent to commit the crime [sexual assault on a child], we hold that his acts of driving toward the apartment where the girl was allegedly waiting and purchasing vaseline to use as a lubricant sufficed for attempt liability."); *see also State v. Townsend*, 105 Wash.App. 622, 20 P.3d 1027, 1033 (2001); *People v. Scott*, 318 Ill.App.3d 46, 251 Ill.Dec. 630, 740 N.E.2d 1201, 1207 (2000); *Dennard v. State*, 243 Ga.App. 868, 534 S.E.2d 182, 187 (2000). *See generally* LaFave, § 11.4(e).

13. In light of this conclusion, we need not and do not reach the government's alternative argument that, by entering a guilty plea that subjected him to federal registration requirements, S.D. became obligated to register as a sex offender in the District of Columbia regardless of whether his offense was comparable or substantially similar to a D.C.Code registration offense.

The order of the Superior Court certifying S.D. as a Class B sex offender and requiring him to register as such with CSOSA for a period of ten years is

*Affirmed.*