UNITED STATES of America,
Plaintiff-Appellee,

v.

Eric Sanford JOHNSON,
Defendant-Appellant.
(Two cases)

Nos. 84–1844, 84–2374.

United States Court of Appeals,
Tenth Circuit.

July 3, 1985.

Dick DeGuerin of DeGuerin & Dickson, Houston, Tex., for defendant-appellant.

Stewart C. Walz, Asst. U.S. Atty. (Brent D. Ward, U.S. Atty., Barbara W. Richman, Asst. U.S. Atty., on the brief), Salt Lake City, Utah, for plaintiff-appellee.

Before BARRETT and SETH, Circuit Judges, and SEAY, District Judge [*].

SETH, Circuit Judge.

Eric Johnson appeals his conviction of attempted possession with intent to manufacture and distribute phenylacetone, a controlled substance. 21 U.S.C. §§ 846 and 841(a)(1). He raises two questions on appeal. Was the indictment fatally vague and ambiguous, and did the government prove with sufficient evidence a completed attempt? After examination of both issues this court is convinced the verdict should be upheld.

Phenylacetone is a controlled substance generally regarded as a chemical precursor of amphetamine and methamphetamine. Eric Johnson, the defendant, began negotiating with Wesley Parish to buy 55 gallons of phenylacetone, then a controlled substance. Mr. Parish owned a chemical manufacturing plant in Orem, Utah. The defendant owned a business that manufactured flexible air-conditioning ducts in Houston, Texas. Wesley Parish cooperated with the DEA during all negotiations. Defendant knew phenylacetone was a controlled substance. Phenylacetone cost $323 per gallon on the open market but the defendant agreed to pay over $900 per gallon. Defendant requested the material be sent in five gallon drums marked either as "Experimental Solvent A" or as "cutting oil" or "glycerol." Early in the negotiations he expressed a desire to be called "Mr. Smith." He sent $10,000 to Mr. Parish for preparation of phenylacetone. On Mr. Parish's request he sent an additional $5,000 towards the purchase. The indictment reads in the conjunctive, "to manufacture *and* distribute." The district court instructed the jury in the disjunctive. Record Vol. I at 180, 193. *Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610, determined that this type of grammatical variance is permissible:

"The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged."

*See also United States v. Watson*, 594 F.2d 1330, 1343 (10th Cir.). The Supreme Court in *United States v. Miller*, —— U.S. ——, 105 S.Ct. 1811, 85 L.Ed.2d 99, decided an indictment which charged more than was necessary did not deprive a defendant of any substantial right.

■ Defendant reads into the indictment ambiguity concerning either identification of the specific controlled substance he allegedly possessed or the substance he manufactured or distributed. Count I of the indictment charges:

"ERIC SANFORD JOHNSON did knowingly and intentionally attempt to possess with intent to manufacture and distribute phenyl acetone, ...."

Defendant claims the indictment omits an essential element of the crime due to its lack of specificity.

*United States v. Radetsky*, 535 F.2d 556, 562 (10th Cir.), articulates the standards for a sufficient indictment established by this court. We find the indictment in this case satisfies these standards. 21 U.S.C. § 841 reads in part:

"(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

"(1) to ... possess with intent to manufacture, distribute, or dispense, a controlled substance...."

The statute provides that possession of a controlled substance with the intent to manufacture a controlled substance comprises a violation. The statute, 21 U.S.C. § 802(14), defines "manufacture" broadly:

" '[M]anufacture' means the production, preparation, propagation, compounding, or processing of a drug or other substance, either directly or indirectly ..., and includes any packaging or repackag-

---

[*] Honorable Frank H. Seay, Chief United States District Judge for the Eastern District of Okla-

homa, sitting by designation.

ing of such substance or labeling or relabeling of its container; ...."

Reading section 841(a)(1) in conjunction with section 802(14), it is a violation to possess a controlled substance with the intent to manufacture the same chemical. Count I adequately gave defendant notice of the charges against him.

Defendant's evidentiary challenge focuses on the line between "preparation" for a crime and an attempted crime. *United States v. Monholland*, 607 F.2d 1311, 1318 (10th Cir.), establishes the purpose for making such a distinction:

> "[M]ere intention to commit a specified crime does not amount to an attempt. It is essential that the defendant, with the intent of committing the particular crime, do some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime."

To complete an attempt a defendant must possess the requisite intent and have taken a "substantial step" towards the crime's commission. *Monholland* at 1320; *United States v. Bunney*, 705 F.2d 378, 381 (10th Cir.). The defendant argues his conduct failed to demonstrate overt acts necessary to prove an attempt. He also claims the government failed to prove the required specific intent.

Defendant's conduct displayed acts sufficient to support his conviction; he asked that the substance he agreed to purchase be mislabeled; he insisted on being called by an alias; he agreed to pay an inflated price for the material; and, finally, he mailed $15,000 to Mr. Parish with the understanding it was a partial payment for 55 gallons of phenylacetone.

Defendant urges that *United States v. Joyce*, 693 F.2d 838 (8th Cir.), presents a closely similar fact pattern. The court in *Joyce* found the defendant did not attempt to possess cocaine. The required substantial step towards commission of the crime was lacking when the defendant refused to produce any money for purchase of the drug; "[h]ere it is undisputed that Joyce, despite having both the opportunity and ability to purchase the cocaine at the agreed upon price, unambiguously refused either to produce his money or to purchase the cocaine." *Joyce* at 842. In *United States v. Mandujano*, 499 F.2d 370, 379 (5th Cir.), the court found the payment of money for purchase of a controlled substance particularly convincing, and said: "Certainly, ... the jury could have found the transfer of money strongly corroborative of the firmness of Mandujano's intent to complete the crime."

Defendant's payment of money to purchase a controlled substance is undisputed. The jury had before it adequate evidence to find that defendant took "[a] substantial step ... strongly corroborative of the firmness of [his] ... criminal intent." *United States v. Bunney*, 705 F.2d 378, 381 (10th Cir.) (quoting *United States v. Mandujano*, 499 F.2d 370, 376 (5th Cir.)).

Wesley Parish shipped benzylacetone, a noncontrolled substance, to Houston. Defendant argues that because he ultimately would not have received a controlled substance he cannot be found to have attempted to possess a controlled substance. Factual impossibility may fall away as a defense to an attempt charge when adequate proof of intent to commit a specific crime exists. *United States v. Conway*, 507 F.2d 1047, 1050 (5th Cir.). Evidence of intent may be coupled with proof of a defendant's acts which stamp his conduct as criminal in nature. *United States v. Oviedo*, 525 F.2d 881, 885 (5th Cir.). *Oviedo* characterized the type of acts needed, "[t]he acts should be unique rather than so commonplace that they are engaged in by persons not in violation of the law." Attempt and preparation are not divided by the last possible act before commission of the crime. *United States v. Mandujano*, 499 F.2d 370 (5th Cir.) (quoting *United States v. Coplon*, 185 F.2d 629 (2d Cir.)). Defendant negotiated with Mr. Parish believing he bought and would receive phenylacetone. In *United States v. Bunney*, 705 F.2d 378 (10th Cir.), this court

decided participation in detailed discussions of a criminal plan coupled with a "firm agreement" to carry out the plan constituted an attempt. In defendant's case not only were there detailed discussions concerning the purchase of a controlled substance but also a firm agreement to buy sealed by a cash payment.

■ Defendant also maintains he lacked the specific intent to manufacture or distribute phenylacetone. He grounds this contention on Wesley Parish's testimony that during one telephone conversation Eric Johnson may have stated he planned to use phenylacetone as a solvent in his manufacturing business. Defendant believes this evidence demonstrates his intent to be only an ultimate user of the substance. Intent is inferred from all the circumstances and is "rarely capable of direct proof." *United States v. Reeves,* 730 F.2d 1189, 1195 (8th Cir.) (quoting *United States v. Cady,* 567 F.2d 771, 774 (8th Cir.)). *See also Fitzgerald v. United States,* 719 F.2d 1069 (10th Cir.); *United States v. McManaman,* 606 F.2d 919 (10th Cir.). Phenylacetone has little commercial use. Its common use is to produce amphetamine and methamphetamine. Defendant presented no evidence to demonstrate phenylacetone's usefulness as a solvent in his particular business. The jury could fairly infer that he intended to manufacture or distribute an unlawful substance because of phenylacetone's exceptionally limited chemical commercial use.

AFFIRMED.