974 F.2d 1346
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Almetra Renee EDWARDS, and Anita Louise Maxey, Defendants-Appellants.
 Nos. 91-5148, 91-5149.
 United States Court of Appeals, Tenth Circuit.
 Sept. 9, 1992.
 
 Before JOHN P. MOORE, Circuit Judge, and McWILLIAMS and BARRETT, Senior Circuit Judges.
 ORDER AND JUDGMENT*
 McWILLIAMS, Senior Circuit Judge.
 
 
 1
 Almetra Renee Edwards and Anita Louise Maxey were convicted on several counts of a multicount indictment charging various drug offenses. Each was sentenced to imprisonment for 123 months followed by four years of supervised release. By separate appeals, Edwards and Maxey seek reversal of their respective convictions and the sentences imposed thereon. On appeal, the two appellants are represented by the same counsel, who, incidentally, also represented both in the trial court. The two appeals by order of this court have been consolidated for briefing and disposition. Finding no reversible error, we affirm.
 
 
 2
 In count one of an eight-count indictment, Edwards alone was charged with the unlawful distribution on February 12, 1991, of cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). In counts two and three, both Edwards and Maxey were charged with the unlawful distribution on February 14 and 15, 1991, respectively, of cocaine base, a Schedule II controlled sbustance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. In count four, both Edwards and Maxey were charged with unlawfully attempting on April 16, 1991, to possess with intent to distribute sixteen ounces of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846. In count five, both Edwards and Maxey were charged with possession of firearms during a drug trafficking offense, in violation of 18 U.S.C. § 924(c). In counts six, seven, and eight, Edwards alone was charged with using a telephone to facilitate a felony drug offense in violation of 18 U.S.C. § 843(b).
 
 
 3
 A jury convicted Edwards on all eight counts. Maxey was convicted on counts four and five, and acquitted on counts two and three. As indicated, each was sentenced to 123 months imprisonment followed by four years supervised release.
 
 
 4
 On appeal, counsel raises three grounds for reversal as to each defendant: (1) the district court erred in admitting evidence of "other crimes" by the two defendants; (2) the district court erred in upholding the "attempt" conviction (count four) of both defendants when the evidence showed only "mere preparation"; and (3) the district court erred in its instructions to the jury which "coerced" the jury in its deliberations. A brief review of the evidence adduced at trial will put these several matters in focus.
 
 
 5
 This was an undercover investigation conducted by the Drug Enforcement Administration (DEA) through the use of a confidential informant named Neil Morrow. Morrow was a twenty-eight year old karate instructor who had himself used cocaine and had been working under cover for the DEA since August, 1990.
 
 
 6
 Morrow testified that on February 12, 1991, he purchased $200 worth of crack cocaine from Edwards (count one). He further testified that on February 14, he purchased $220 worth of crack cocaine from Edwards, and that Maxey accompanied Edwards to the scene of the purchase and was present at the time of the sale (count two). Morrow also testified that on February 15, 1991, he purchased $500 worth of crack cocaine from Edwards and that again Maxey accompanied Edwards to the scene of the purchase and was present at the time of the transaction (count three).
 
 
 7
 Sometime in April, 1991, the defendants, or one of them, according to Morrow, called him and inquired about the possibility of their purchasing cocaine from Morrow. On April 16, 1991, Morrow testified that by prearrangement he met both Edwards and Maxey in the parking lot of the karate school where he worked, and that their mutual understanding was that he would sell 20 ounces of cocaine to Edwards and Maxey for $10,000. Morrow testified that the defendants asked him to get into their car, which he did, and that Maxey was in the driver's seat with Edwards in the back seat. At that time and place, according to Morrow, he asked to see their money, which the defendants had in a brown sack. Morrow testified that when he counted the money there was only $8,000, and the defendants agreed that they were $2,000 short. According to Morrow, the defendants asked if they could be given $2,000 credit on the purchase.
 
 
 8
 At this point, the three left the car and proceeded into Morrow's office so that Morrow could telephone his "supplier," a DEA agent, and be advised as to what he should do. Morrow was advised by the DEA agent that there would be no credit extension, but that he should sell them 16 ounces of cocaine for $8,000. Such was agreed to by the defendants, and it was apparently also agreed that the actual delivery would take place at a nearby hotel. However, when Morrow and the two defendants returned to defendants' car it was discovered that the defendants had locked their keys in the car along with the $8,000. Minutes later, as Morrow was attempting to unlock or break into the car, the police arrived and arrested the two defendants. Morrow also testified that when he was seated in defendants' car they showed him that they were both armed.
 
 
 9
 A search of the defendants' vehicle disclosed a brown paper sack containing $7,940 in currency and a triple beam scale. Also seized were a loaded .22 caliber revolver from the right coat pocket of Maxey, and a loaded Smith and Wessen .38 special from the coat pocket of Edwards.
 
 
 10
 Evidence concerning the telephone calls made by Edwards in connection with drug sales (counts six, seven, and eight) need not be recounted, since the sufficiency of evidence on those counts and indeed the sufficiency of the evidence on all counts, except count four (attempt), is not challenged on appeal.
 
 
 11
 I. Evidence of "Other Crimes"
 
 
 12
 Morrow, during the course of his direct examination, testified not only as to the several transactions which formed the basis for the several counts in the present indictment, but also stated, over objection, that he had known the defendants for some two years prior to February 12, 1991, and had some twenty-five prior drug dealings with Edwards, and one or two with Maxey, adding that Maxey, however, frequently accompanied Edwards on other occasions. The government successfully contended in the district court that such testimony tended to show a "continuous course of conduct," and that such in turn tended to show intent, knowledge, absence of mistake on the part of the defendants in relation to the transactions occurring on February 12, 14, and 15, 1991, and on April 16, 1991.
 
 
 13
 Counsel argues that Morrow's testimony concerning drug deals with the two defendants other than the transactions alleged in the indictment violates Fed.R.Evid. 404(b). A trial court's decision to admit evidence under Rule 404(b) is generally reviewed under an abuse of discretion standard. See United States v. Record, 873 F.2d 1363 (10th Cir.1989). Recent cases would seem to indicate that such testimony is admissible. See, e.g., United States v. Poole, 929 F.2d 1476 (10th Cir.1991). See also, United States v. Record, supra. Be that as it may, in the instant case any error in this regard would, in our view, be only harmless error. Morrow testified in detail as to his dealings with Edwards on February 12, 1991, and his dealings with Edwards and Maxey on February 14 and 15, 1991, and April 16, 1991. Those meetings were monitored by DEA agents whose testimony corroborated that of Morrow's in all essentials. Neither of the defendants testified, and no defense witnesses were called. The trial court also provided the jury with a limiting instruction explaining that the evidence was only relevant in determining state of mind or intent or motive.[1] It is on this state of the record that we conclude that any error arising out of Morrow's testimony concerning other acts was harmless.
 
 
 14
 Although the defendants did not themselves testify, their counsel suggested to the district court, and to the jury in opening statement, that Maxey really had nothing to do with any of the several transactions, and was "only present" and that Edwards should be acquitted because Morrow was himself a "bad person" and should not be believed.[2] However, as we understand it, counsel for Edwards specifically stated that he was not relying on entrapment as a defense. No instruction was given the jury on entrapment nor was one requested. In sum, Morrow's testimony was corroborated by other witnesses in about every important detail, and was in no wise refuted. It is on this basis that we find any possible error was only harmless error.
 
 II. The Insufficient Evidence of An Attempt
 
 15
 As to count four, counsel argues that there was insufficient evidence of any attempt by the defendants to sustain the guilty verdicts returned by the jury. His argument is that the defendants abandoned their effort to complete the purchase of the cocaine at the time they inadvertently locked their ignition key in the car. We do not agree.
 
 
 16
 An "attempt" occurs when there is an unlawful intent plus an overt act which constitutes a "substantial step" towards the crime's commission. United States v. Johnson, 767 F.2d 673 (10th Cir.1985). In United States v. Prichard, 781 F.2d 179, 181 (10th Cir.1986), we defined a "substantial step" as one which is "strongly corroborative of the firmness of the defendant's criminal intent." Here there certainly was the requisite intent, and the actions of the two defendants in driving to Morrow's place of business, each carrying a loaded firearm, and then displaying to Morrow $8,000 in the brown sack with which they were to purchase cocaine, is an overt act sufficient to sustain a conviction for an attempt charge. Such acts "strongly corroborate" the defendants' criminal intent.
 
 
 17
 The fact that the attempted crime was never completed does not absolve defendants from their attempt efforts. It would appear that in reality the defendants did not "abandon" their effort to purchase cocaine even when they discovered they had locked their keys in the car, as they, with the aid of Morrow, attempted to regain entry into the car and, if successful, would have presumably completed their purchase. They may well have "abandoned" the deal when arrested by the police, but only then!
 
 III. Coercion of the Jury
 
 18
 The case was submitted to the jury about four o'clock p.m. The jury was instructed by the district judge that they should commence their deliberations and that at about five o'clock p.m. he would bring them back into the courtroom and inquire as to their progress. The judge further told the jury that if it then appeared that a verdict was imminent they would be permitted to deliberate a bit longer. However, the judge also advised the jury that if a verdict did not appear imminent, they would be permitted to return to their homes for the evening and would resume their deliberations the next morning at nine o'clock. Apparently, the jury reached a verdict shortly before five o'clock p.m. and counsel argues that this was because of the coercive comment by the district court. We disagree.
 
 
 19
 We regard the judge's statement as being "neutral." The judge was simply outlining the procedure to be followed. We note that there was no contemporaneous objection to the court's statement to the jury concerning how long they would be permitted to deliberate prior to adjourning until the following morning. A district court's determination regarding the length of time a jury will be kept together for deliberation is generally reviewed on an abuse of discretion standard. See Barker v. Crouse, 426 F.2d 531 (10th Cir.1970) and Mills v. Tinsley, 314 F.2d 311 (10th Cir.1963), cert. denied, 374 U.S. 847 (1963). We find no abuse of discretion in the instant case, let alone plain error.
 
 
 20
 Judgment affirmed.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 See United States v. Harrison, 942 F.2d 751 (10th Cir.1991) (admission of bad acts considered harmless error where purpose of admission is appparent from record and decision to admit correct); United States v. Sanders, 928 F.2d 940 (10th Cir.1991), cert. denied, 112 S.Ct. 142 (1991) (evidence of uncharged offense with no limiting instruction admissible when alleged error had no effect on defendant's substantial rights); United States v. Hosford, 782 F.2d 936 (11th Cir.1986), cert. denied, 476 U.S. 1118 (1986) (in light of overwhelming evidence against defendant, admission of evidence of several prior bad acts unrelated to crime for which defendant was charged was at most harmless error)
 
 
 [2]
 In his opening statement to the jury, defense counsel, however, spoke as follows:
 "She [Edwards] will tell you that she sold small amounts of cocaine after Neil Morrow paged her, called her, harassed her, hounded her, was persistent and aggressive in trying to make these drug deals. [Edwards] will tell you the truth, that she did sell these drugs three times in February."