12 F.3d 215
 Medicare&Medicaid Guide P 41,995
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tom HENRY, David Jones and James Henry Defendants-Appellants.
 Nos. 92-6649, 92-6650 and 92-6653.
 United States Court of Appeals, Sixth Circuit.
 Nov. 29, 1993.
 
 Before: KEITH and KENNEDY, Circuit Judges; and JORDAN, District Judge.*
 PER CURIAM:
 
 
 1
 Defendants-Appellants, Tom Henry, David Jones and James Henry, appeal their convictions in connection with the theft of Medicare funds. James Henry was convicted of Making False Statements, in violation of 18 U.S.C. Sec. 1001. Tom Henry and David Jones were convicted of Conspiring to Defraud the United States, in violation of 18 U.S.C. Sec. 371, Obstructing a Federal Audit, in violation of 18 U.S.C. Secs. 1516 and 2, and Making False Statements, in violation of 18 U.S.C. Secs. 1001 and 2. In addition, Tom Henry was convicted of Theft Concerning Programs Receiving Federal Funds in violation of 18 U.S.C. Sec. 666(a)(1)(A), Paying Kickbacks for Referral of Patients in violation of 42 U.S.C. Sec. 1320(a)-7b(b)(2)(a), and Money Laundering in violation of 18 U.S.C. Secs. 1957 and 2. For the reasons stated below, we AFFIRM the convictions and sentences imposed by the district court.
 
 I.
 
 2
 Tom Henry owned and operated Tennessee Health Services, Inc., (THS), which was the home office for numerous Home Health Care Agencies (HHCA) which he also owned, including First Tennessee In-Home Care (FTHHA); Mid-Cumberland Home Health (MCHHA); Doctors Home Health, Inc., (DHHA); South Central Home Health (SCHHA); and South West Home Health, Inc. (SWHHA). Tom's brother, James Henry, was the administrator of SCHHA. Unlike the other HHCAs owned by Tom Henry, SCHHA maintained its own checking accounts, accounts receivable and payroll. Tom Henry controlled the accounts of the other HHCAs from THS.
 
 
 3
 The HHCAs were licensed by Medicare. Medicare is administered by the U.S. Department of Health and Human Services (HHS). HHS contracts with insurance companies (intermediaries) to distribute Medicare funds. The intermediary pays the Medicare funding to providers of medical care, such as HHCAs. Medicare covers the reasonable cost of direct patient care and overhead expenses incurred.
 
 
 4
 The HHCAs receive Medicare funds through the intermediary at interim periods during the year based on claims for the preceding year. At the end of the fiscal year, the HHCA submits a cost report to the intermediary summarizing expenses incurred that year for its Medicare patients. The intermediary reviews the cost report and if the actual costs on the report are more than the HHCA received during the year, Medicare pays the difference. If, however, the actual costs incurred by the HHCA for the year are less than the amount advanced by the intermediary, the HHCA must repay Medicare the difference.
 
 
 5
 The appellants in this case were involved in a number of transactions which enabled them to pilfer Medicare funds. One method of unlawfully receiving Medicare funds was to direct the HHCAs to conduct business transactions with companies which the appellants secretly owned, and seek reimbursement for the profits made. An HHCA may do business with a related party, such as a company that is owned by or controlled by the owner of the HHCA. However, the HHCA may not receive Medicare money for profits made on the goods or services provided by that related party.
 
 
 6
 The appellants perpetrated this scam a number of times. For example, In 1989, David Jones and Tom Henry formed a management company called Datom International to manage the HHCAs. In addition, they formed Datom Business Service to perform accounting services for the HHCAs. In order to receive Medicare money for profits made from the management and accounting businesses, Tom Henry purported to sell THS and the HHCAs for $25,000 to John Greer, Jr. In fact, the transaction was a sham; no money changed hands. Tom Henry and David Jones continued to control the agencies.
 
 
 7
 Also, in 1988, Tom Henry and David Jones "bought" Argus Medical Supply (Argus) from Sidney Ford, again for no money. Argus sold medical supplies to the HHCAs owned and operated by Tom Henry, with a markup of at least 65 percent. In addition, Tom Henry was one of the owners of First Tennessee Medical Supplies, Inc. Tom Henry directed employees of his HHCAs to purchase medical equipment from First Tennessee Medical Supplies, Inc. Tom Henry also formed KM & M Leasing Company (KM & M) with John Greer, Sr. KM & M leased vehicles and office furniture to the HHCAs owned by Tom Henry. Tom Henry split KM & M's profits with John Greer, Sr.
 
 
 8
 For each of the cost reports filed for the HHCAs, the appellants indicated that business was conducted with Argus, First Tennessee Medical Supplies, KM & M and profit was charged to Medicare as a cost. Nevertheless, the cost reports falsely stated that there had been no transactions conducted with related parties for the years in question.
 
 
 9
 In another scheme to illegally receive Medicare funds, Tom Henry paid a number of physicians a monthly fee to refer patients to his HHCAs. In 1988, Henry paid approximately $50,000 to these physicians under the guise of "medical advisors." Henry claimed that amount on the Medicare cost report for that year.
 
 
 10
 In an additional effort to defraud Medicare funding, in 1989, David Jones and Tom Henry hired Dan Miller, an accountant, to prepare a draft of the 1988 cost reports for the HHCAs. The agencies received money from Medicare during 1988 through interim payments. Miller found that in 1988, Medicare paid the HHCAs approximately $300,000 over the actual reimbursable costs incurred. In order to avoid reimbursing Medicare, David Jones told Miller to falsify the records so that it would appear nothing was owed to Medicare. Accordingly, Miller increased the salary amounts listed in the cost reports of some of the HHCAs for 1988, to make it appear that bonuses were paid to employees.
 
 
 11
 In 1989, the 1987 costs reports for a number of HHCAs were audited. To hide the fact that these bonuses were never paid, Tom Henry ordered Miller to give the auditors bogus checks and bank statements, including checks that had not cleared the bank and checks that were altered.
 
 
 12
 After learning that the 1988 cost reports would be audited, Tom Henry told Miller to prepare a list of employees and the amount supposedly paid to them in bonuses to match the amounts stated on the 1988 cost report. Tom Henry also told Miller to prepare notes of financial obligation purporting to reflect bonuses due to the employees, containing the employees' initials or signature. Many employees testified that the initials or signatures on the notes were not their own. In addition, David Jones told Miller to prepare Merit Pay Schedules purporting to show liquidation of the bonus amounts. The schedules were actually a listing of the employees' regular pay checks.
 
 
 13
 Miller also gave auditors documentation to support mileage expenses for Tom Henry for the THS cost report. According to the documentation, Tom Henry made three round trips from Lebanon, Tennessee to Johnson City, Tennessee, and one round trip to Memphis, Tennessee, all in one day. Johnson City is approximately 250 miles from Lebanon Tennessee. In addition, Miller claimed on this cost report amounts which were actually used for travel and expenses for Tom Henry and friends for a vacation in Cancun, Mexico.
 
 
 14
 In April 1990, the 1988 cost reports for FTHHS, SCHHA, DHA and MCHHA were audited. Under Tom Henry and David Jones' direction, Miller prepared false documentation showing that employees of MCHHA were paid $230,000 in bonuses, employees of DHA $90,500, and employees of SCHHA $12,500. None of these employees were paid this money at this time. In addition Miller noted in the MCHHA cost report that Henry Puckett was paid $40,000 in salary, despite the fact he was not employed by MCHHA. In the DHA cost report, Miller stated that $1,100 each was paid to Boston Baptist Church and to Greater New Salem Baptist Church. However, in fact, only $600 was paid in rent to Boston Baptist Church; the remainder was paid directly to Rev. Mays as compensation for referring parishioners to DHA. Rev. Walker of Greater New Salem Baptist Church was paid the entire $1,100 as compensation for referring parishioners to DHA.
 
 
 15
 Finally, Tom Henry directed the HHCAs to submit claims to Medicaid for co-insurance payments for Medicare patients. Medicaid will pay co-insurance only on Medicare patients for the purchase of medical equipment and supplies. Tom Henry altered the forms to claim $1,000,000, when only approximately $12,000 of the claims were legitimate.
 
 
 16
 At the appellants' sentencing hearing, the HHS testified to the amount of money appellants' owed according to the cost reports for the years in question, the amount of profit paid to related parties and charged to Medicare, the amount fraudulently recovered for personal expenses, and the amount incorrectly billed to Medicaid. James Henry was sentenced to 12 months incarceration, fined $3,000 and ordered to pay $42,010 in restitution. David Jones was sentenced to 51 months incarceration and restitution in the amount of $2,460,950.02. Tom Henry was sentenced to imprisonment for 57 months, restitution of $4,464,697.25 and forfeiture to the United States of $191,202.80.
 
 II.
 
 17
 The appellants raise several issues on appeal. Each are addressed seriatim below.
 
 A.
 
 18
 Tom Henry contends that the district court lacked subject matter jurisdiction over the charge that appellants' failed to disclose transactions with "related parties," in violation of 18 U.S.C. Secs. 1001 and 2. He argues that a determination of whether a provider has acquired goods or services from a related party is to first be reviewed by the administrative Provider Reimbursement Review Board (PRRB) of HHS.
 
 
 19
 Title 18 U.S.C. Sec. 3231 vests federal district courts with jurisdiction over offenses against the laws of the United States. The defendants were charged with making false statements to the United States government. The district court therefore has jurisdiction to hear this case.
 
 
 20
 The Provider Reimbursement Review Board is an administrative resolution process for the resolution of civil claims. As the First Circuit noted in United States v. Alemany Rivera, 781 F.2d 229 (1st Cir.1985), cert. denied, 475 U.S. 1086 (1985), the district court's assumption of criminal jurisdiction did not usurp the Provider Reimbursement Review Board's civil jurisdiction. Id. at 233. Because the HHS's primary jurisdiction for reimbursement disputes lies solely in the civil arena, the federal question jurisdiction of the district court in federal criminal cases is unaffected by the Medicare Act. Therefore, because defendants were charged with criminal offenses against the United States, the district court exercised proper jurisdiction over the prosecution of federal criminal statutes.
 
 B.
 
 21
 On appeal, David Jones contends for the first time that the government failed to prove he was the "David Jones" named in the indictment. Jones argues that the government failed to prove the identification element of its case. The identity of David Jones was not challenged during the trial, and no motion for acquittal on the failure to identify was made at the close of trial. Therefore, the defendant is precluded from raising this issue before this Court for the first time. See Rebel Motor Freight, Inc. v. I.C.C, 971 F.2d 1288 (6th Cir.1992). In addition, the silence of the witnesses who testified regarding David Jones' conduct (as well as the conduct of Tom and James Henry) is circumstantial evidence of identity, as these witnesses were well acquainted with David Jones, and if a different David Jones was being tried, such witnesses would no doubt have questioned his presence in the courtroom. United States v. Fenster, 449 F.Supp. 435, 442 (E.D.Mich.1978).
 
 C.
 
 22
 Next, the appellants claim that the district court's jury instruction on the false statement counts failed to ensure jury unanimity. The appellants were charged with making false writings containing false statements. The trial court gave the following instruction on the requirement of a unanimous verdict:
 
 
 23
 In order to return a verdict, it is necessary that each Juror agree thereto. In other words, your verdict must be unanimous.
 
 
 24
 During its deliberations, the jury asked the following:
 
 
 25
 In Count Fourteen, where it reads 'he then and there well knew all costs listed on the cost [report] were not reimbursable' does 'all' mean the total amount or part of the $370,590?
 
 
 26
 At this point, the appellants filed proposed instructions on unanimity regarding related parties and reimbursable costs. The court denied the request, and the appellants challenge that denial on appeal.
 
 
 27
 In this case, the jury unanimously found beyond a reasonable doubt that the defendants committed acts that caused false writings to be submitted to an agency of the United States. It does not matter whether the defendants "made" the false documents knowing that they would be passed on to the government or if they actually "used" the documents by physically passing them on to the government.
 
 
 28
 In reviewing jury instructions, this Court must examine the entire charge "to determine whether [the instructions] adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision." United States v. Montgomery, 980 F.2d 388, 392 (6th Cir.1992). Challenges to the trial judge's language are reversible only for an abuse of discretion. United States v. Busacca, 863 F.2d 433, 435 (6th Cir.1988), cert. denied, 490 U.S. 1005 (1989).
 
 
 29
 In United States v. Sanderson, this Court held that the test for specific unanimity instructions is "a common-sense determination of a subject statute's application and purpose in light of traditional notions of due process and fundamental fairness." 966 F.2d 184, 188 (6th Cir.1992). Applying the Sanderson test to the present issue, the intent of Sec. 1001 is clear. The purpose of Sec. 1001 is to punish those who cause false statements to be submitted to a government agency. "Make" or "use" are alternative means of satisfying this purpose.
 
 
 30
 Therefore, because the jury charge on this matter fully comported with traditional notions of fundamental fairness and due process, we find no error in the district court's instruction.
 
 D.
 
 31
 David Jones challenges the sufficiency of the evidence to convict him of obstructing a federal audit, in violation of 18 U.S.C. Secs. 1516 and 2. Jones argues that the government failed to prove that the HHCAs received in excess of $100,000 a year from the United States.
 
 
 32
 In order to determine whether the evidence was sufficient to support Jones' conviction, this Court must sustain the determination of the jury if it is supported by substantial and competent evidence. United States v. Tilton, 714 F.2d 642, 645 (6th Cir.1983). This Court must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in a light most favorable to the government. United States v. Sanchez, 928 F.2d 1450, 1457 (6th Cir.1991).
 
 
 33
 At trial, the evidence established by the audits and other records revealed that the nursing homes involved received at least $100,000 a year. The evidence also established that Jones ordered the preparation of the cost reports that were sent to Medicare and attempted to cover up false cost entries by ordering an employee to prepare a schedule of bonuses called Merit Pay Schedules to show that the bonuses had been liquidated within a year of issuance. In addition, Jones gave altered checks to the auditors. In this case, it is clear that a reasonable jury could have found David Jones guilty of obstructing a federal audit.
 
 E.
 
 34
 Appellants Tom Henry and David Jones argue that the district court erred by not allowing expert witness Gary Bowers to critique or comment on the testimony of other witnesses or to give legal opinions. The trial judge has broad discretion regarding the admission of expert evidence and evidentiary rulings should not be disturbed unless they are manifestly erroneous. Mannino v. Intern. Mfg. Co., 650 F.2d 846, 849 (6th Cir.1981). In this case, the court did not abuse its discretion. Bowers was allowed to attend the trial and testify on a number of issues, and was properly precluded from critiquing or commenting on the testimony of other witnesses. More importantly, this issue was not preserved for appeal. Under Federal Rule of Evidence 103, no error may be predicated on a ruling which excludes evidence unless the substance of the evidence was made known to the court by offer or was apparent from the context in which the questions were asked. Neither occured in this case.
 
 F.
 
 35
 Tom Henry contends that Counts Four and Five of the superseding indictment must be dismissed because they are multiplicitous. In Counts Four and Five, Tom Henry is charged with using two separate schemes to violate 18 U.S.C. Sec. 666, Theft from a Program Receiving Federal Funds. Although the time during which the violations occurred was overlapping, in one scheme Tom Henry used funds embezzled from THS, an organization receiving federal funds, to purchase real estate, and in another scheme he used the funds to pay his personal expenses. The separate nature of these two acts properly constitute a basis to charge them both as separate offenses.
 
 G.
 
 36
 Tom Henry next contends that the trial court lacked subject matter jurisdiction over Counts Four and Five. He claims that THS did not receive benefits from a federal program as contemplated by that statute. In fact, Medicare funds were disbursed through an intermediary to THS pursuant to a contract with HHS to provide medical care to eligible persons. According to the legislative history of Sec. 666, Congress intended to protect federal programs which result from "a specific statutory scheme authorizing the Federal assistance in order to promote or achieve certain policy objectives." S.Rep. No. 225, 98th Cong., 2d Sess. 369, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3510-11. Therefore, the district court properly exercised its jurisdiction because THS clearly received medicare funds.
 
 
 37
 Tom Henry also argues that the evidence was insufficient to convict him of Counts Four and Five, Theft from a Program Receiving Federal Funds. He contends that the related money laundering and forfeiture charges contained in Counts Six through Thirteen, and Thirty-Six, must therefore also fail for lack of sufficient evidence. Specifically, Tom Henry argues that the government was required and failed to prove that the money he took from the THS account and converted to his personal use were actually federal funds. He asserts he was entitled to the money he took from THS as compensation for the services he rendered to THS or as repayment of loans. However, as the court stated in United States v. Westmoreland, 841 F.2d 572, 577 (5th Cir.), cert. denied, 488 U.S. 820 (1988) the government is not required to trace the flow of federal money under 18 U.S.C. Sec. 666. Therefore, Henry's argument fails.
 
 
 38
 Tom Henry also argues that he lacked criminal intent with respect to Counts Four and Five, because he held a good faith belief that he was entitled to the funds in question. The elements of knowledge and intent are questions of fact for the jury. United States v. Johnson, 767 F.2d 673 (10th Cir.1985).
 
 
 39
 The government's evidence established that from 1987 to 1989, Tom Henry received $264,181.45 from THS in excess of sums legitimately due him. The evidence demonstrated that he used this money for personal expenses, such as credit card expenses, furriers and vacations. The jury properly concluded that he intended to misapply the THS money for personal expenses. Therefore, this Court upholds the convictions on Counts Four and Five, as well as the related charged in Counts Six through Thirteen and Thirty-six.
 
 H.
 
 40
 Next, Tom Henry contends that the district court violated his right to due process by refusing to bifurcate the jury deliberations on the forfeiture count from the remainder of the case. The forfeiture count required proof by a preponderance of the evidence, while the remainder of the charges required proof beyond a reasonable doubt.
 
 
 41
 The decision to bifurcate jury deliberations of guilt and forfeiture is squarely in the discretion of the trial court judge. United States v. Smith, 966 F.2d 1045 (6th Cir.1992). In this case, the trial court judge repeatedly emphasized to the jury, on both its jury instructions and on the verdict sheet, that the issues of guilt and forfeiture were to be determined separately. Therefore, there is no evidence that the court abused its discretion.
 
 I.
 
 42
 James Henry contends that the district court erred in denying his motion for a bill of particulars. James Henry argues that he was surprised by evidence of $29,010.00 in management and contract checks for Tom Henry which were included on the 1988 Medicare cost report for SCHAA.
 
 
 43
 The decision to grant or deny a motion for a bill of particulars lies within the sound discretion of the trial court. United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir.1993). For the denial of a motion to be overturned, a defendant must show not only that the district court abused its discretion, but also that the defendant suffered surprise or other prejudice at trial. Id., at 1375.
 
 
 44
 James Henry's contention of surprise is without merit. James Henry's counsel admitted that he learned of his client's participation in the cashing of the checks the week before the government discovered the information. Accordingly, James Henry has not shown either an abuse of discretion nor actual surprise. Therefore, the district court's denial of the motion was proper.
 
 J.
 
 45
 In addition, James Henry argues that the district court erred in allowing testimony regarding his company-provided automobile, his joint ownership of the building in which SCHHA is located and the writing and cashing of the management and contract checks to Tom Henry. James Henry contends that the district court violated Fed.R.Evid. 401 and 403 in allowing this testimony.
 
 
 46
 The decision whether to admit evidence is under the discretion of the district court. United States v. Brady, 595 F.2d 359, 361 (6th Cir.), cert. denied, 444 U.S. 862 (1979). In reviewing the decision, the evidence is viewed "in the light most favorable to its proponent." Fed.R.Evid. 401 states that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Fed.R.Evid. 403 limits the introduction of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
 
 
 47
 There is no indication that the evidence, which was clearly relevant, was in any way unfairly prejudicial. Therefore, the district court properly admitted the evidence.
 
 K.
 
 48
 Next, James Henry argues that the evidence presented was insufficient to convict him of Making False Statements in violation of 18 U.S.C. Secs. 1001 and 2. As stated above, this Court must sustain the determination of the jury if it is supported by substantial and competent evidence. United States v. Tilton, 714 F.2d 642, 645 (6th Cir.1983).
 
 
 49
 The evidence is this case established that James Henry aided and abetted Tom Henry in knowingly and willfully making a material false statement on the 1988 SCHHA Medicare cost report. For example, although James Henry did not sign the cost report, he was extensively involved in the management of SCHHA. He maintained control of SCHHA's checkbook, accounts receivable and accounts payable. James Henry ordered that improper checks be written to Tom Henry. This evidence, along with other incidents, provided a sufficient basis for the jury's determination of James Henry's guilt.
 
 L.
 
 50
 David Jones argues that the district court incorrectly calculated the amount of money stolen from Medicare funds in determining his offense level at sentencing. Factual findings of the sentencing court are upheld unless clearly erroneous. United States v. Muhammad, 948 F.2d 1449, 1455 (6th Cir.1991), cert. denied, 112 S.Ct. 1239 (1992).
 
 
 51
 Jones was found guilty of Making False Statements on Medicare cost reports in violation of 18 U.S.C. Sec. 1001. In sentencing for Sec. 1001 violations, the court calculates the sentence pursuant to U.S.S.G. Sec. 2F1.1, which provides for a base offense level of six (6) and allows for increases based upon the amount of property stolen. In this case, the district court found that $3,669,331.39 was stolen, and increased David Jones' offense level by 13 points.
 
 
 52
 David Jones failed to present any evidence to establish that the government's calculation was inaccurate or "outside the universe of acceptable computations." United States v. Tardiff, 969 F.2d at 1288 (applying Section 2F1.1 to a conviction for mail fraud). The district court found that the government's calculations were correct, no evidence was presented to prove that this finding was clearly erroneous.
 
 M.
 
 53
 Next, James Henry contends that his offense level should not have been increased by two levels and that he should not have been required to pay restitution in the amount of $29,510.00. At sentencing, the district court added four points to James Henry's base offense level and ordered him to pay total restitution of $42,010.00.
 
 
 54
 In sentencing, the district court must consider relevant conduct in determining the appropriate guideline range, according to section 1B1.3 of the Sentencing Guidelines. The district court's determination of relevant conduct will not be disturbed unless clearly erroneous. United States v. West, 948 F.2d 1042, 1045 (6th Cir.1991), cert. denied, 112 S.Ct. 1209 (1992). This Circuit has repeatedly held that uncharged relevant conduct may be considered by the sentencing court in determining the guideline range. Id. at 1045; see also United States v. Wilson, 954 F.2d 374, 377 (6th Cir.1992); United States v. Kappes, 936 F.2d 227, 229 (6th Cir.1991). Conduct which is part of the same course of a common scheme may be included if there is some "indicium of reliability beyond mere allegation." United States v. Smith, 887 F.2d 104, 108 (6th Cir.1989).
 
 
 55
 In determining defendant's offense level, the court included all amounts which were falsely claimed as reimbursable by Medicare on the SCHHA filing. James Henry was in charge of SCHHA, as shown by the fact that he maintained the checkbooks and signed the checks. His participation in the scheme to funnel $29,510.00 to his brother was clear, and properly included as relevant conduct by the district court.
 
 
 56
 James Henry also argues that since the $29,510.00 of "consulting fees" were not relevant conduct, that amount is not part of the underlying offense of conviction and therefore restitution may not properly be ordered. The government's evidence showed that the $29,510.00 consisted of SCHHA checks written to Tom Henry and cashed at the direction of James Henry. These fees were clearly a part of the "offense of conviction" and the district court correctly ordered James Henry to pay restitution for this amount.
 
 N.
 
 57
 James Henry also contends that the district court incorrectly enhanced his sentence two levels for "more than minimal planning," under U.S.S.G. Sec. 2F1.1(b)(2). This finding will be reversed only if clearly erroneous. United States v. Muhammad, 948 F.2d at 1455. The evidence established that James Henry engaged in repeated acts to accomplish and conceal the making of false statements on a Medicare cost report. Based on this evidence, we find no error in the district court's determination that there was more than minimal planning on the part of James Henry.
 
 O.
 
 58
 Next, James Henry argues that the district court erred in determining that he was not a minor or minimal participant in the scheme, and therefore not entitled to a four level reduction under U.S.S.G. Sec. 3B1.2(a). Again, the evidence showed that James Henry made false statements on at least two cost reports for SCHHA, signed fake promissory notes to support non-existent bonuses, and received cash from checks written to Tom Henry for bogus consulting fees. Accordingly, we find no error in the district court's determination that James Henry was not a minor participant in this criminal activity.
 
 P.
 
 59
 David Jones also contends that the trial court erred by enhancing his sentence three levels for a leadership role, rather than only by two levels for "more than minimal planning." Contrary to Jones' assertions, the trial court did not engage in double counting, because it did not apply enhancements for both having a leadership role and for engaging in more than minimal planning. Instead, the court simply applied the enhancement for a leadership role. Accordingly, we find no error in the district court's decision to increase Jones' guideline level for his role in the offense.
 
 Q.
 
 60
 Finally, all three appellants argue that the district court erred in imposing restitution for losses for which the victim has or will receive compensation. They argue that, based upon audit adjustment factors, the correct amounts are much lower. However, according to the evidence, the amounts of restitution determined by the district court are proper, and the appellants have been credited with all amounts recovered.
 
 III.
 
 61
 Therefore, we AFFIRM the appellants' convictions and sentences.
 
 
 
 *
 The Honorable Leon Jordan, United States District Court for the Eastern District of Tennessee, sitting by designation