*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CO-1330

UNITED STATES, APPELLANT,

V.

DELONTA K. HAWKINS, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF1-10431-18)

(Hon. Danya A. Dayson, Trial Judge)

(Argued September 21, 2021                    Decided October 21, 2021)

*Sharon A. Sprague*, Assistant United States Attorney, with whom *Jessie K. Liu*, United States Attorney at the time this brief was filed, and *Elizabeth Trosman* and *Kenechukwu Okocha*, Assistant United States Attorneys, were on the brief, for appellant.

*Lee R. Goebes*, Public Defender Service, with whom *Samia Fam* and *Shilpa S. Satoskar*, Public Defender Service, were on the brief, for appellee.

Before EASTERLY and MCLEESE, *Associate Judges*, and FISHER, *Senior Judge*.

EASTERLY, *Associate Judge*: The District's Sex Offender Registration Act of

1999, D.C. Code §§ 22-4000 et seq. (2012 Repl.), authorized the Court Services and

Offender Supervision Agency (CSOSA) for the District of Columbia to create a database of "sex offenders," and provides that people shall register to be included in that database for different periods of time—ten years or their lifetime—depending on the nature of their specific offense. D.C. Code § 22-4002(a), (b). The statute also imposes a lifetime registration obligation on recidivist sex offenders. *See* § 22-4002(b)(3), (4). The question before us is whether appellant, Delonta K. Hawkins, is subject to the latter provisions.

Mr. Hawkins pled guilty in 2018 to one count of misdemeanor sexual abuse of a child. Because he had already been convicted of misdemeanor sexual abuse of another child two years prior, the government argued that the court should certify him as a sex offender subject to lifetime registration. The trial court, however, concluded that the recidivist provisions in § 22-4002(b)(3) and (4) required two prior adjudications of guilt and sentencing, not including the instant offense, and thus certified Mr. Hawkins as a sex offender subject to a ten-year registration period. On appeal, as it did before the trial court, the government argues that the recidivism provisions of the SORA statute, § 22-4002(b)(3) and (4), allow a trial court to count the instant offense before the court and any previous conviction. We agree with the government and reverse.

## I. Statutory Framework

SORA was enacted "to establish a sex offender registration and notification program that authorizes CSOSA to create and maintain the sex offender registry for the District of Columbia." The Sex Offender Registration Act of 1999, D.C. Council, Comm. on the Judiciary, Report on Bill 13-350 at 2 (November 15, 1999). Under the statute, CSOSA bears central responsibility for monitoring sex offenders and keeping the registry up-to-date. *See* D.C. Code § 22-4007. Local agencies have reporting obligations to CSOSA.[1] *See* §§ 22-4005, -4006. In addition, the Superior Court, "[u]pon a finding that a defendant committed a registration offense," is required to "enter an order certifying that the defendant is a sex offender and that the defendant will be subject to" the appropriate registration period. § 22-4003.

The statutory scheme defines the term "committed a registration offense" to mean either: (1) "[w]as convicted or found not guilty by reason of insanity of a registration offense," § 22-4001(3)(A)(i), *see also* § 22-4001(6), (8) (enumerating

---

[1] Although the majority of crimes categorized as registration offenses, D.C. Code § 22-4001(6), (8), are prosecuted by the United States Attorney's Office for the District of Columbia, *see* D.C. Code § 23-101(c), SORA does not define any role for that office.

registration offenses), or (2) "was determined to be a sexual psychopath under §§ 22-3803 through 22-3811," § 22-4001(3)(A)(ii).[2] Registration periods are set forth in § 22-4002(a) and (b). Subsection 22-4002(a) sets forth a ten-year default registration obligation "start[ing] when a disposition described in 22-4001(3)(A) occurs," § 22-4002(a), except as described in § 22-4002(b). Subsection 22-4002(b) describes four categories of people required to register as sex offenders not merely for ten years, but "throughout the[ir] lifetime[s]," which obligation also "starts when a disposition described in 22-4001(3)(A) occurs."

The first two categories of people who must register for life under § 22-4002(b) are those who have "[c]ommitted a registration offense that is a lifetime registration offense," § 22-4002(b)(1), or have been "determined to be a sexual psychopath under §§ 22-3803 through 22-3811." § 22-4002(b)(2). *But see supra* note 2.

The other two categories of people who must register for life under § 22-4002(b) are described by the recidivism provisions, which are the provisions at

---

[2] *But see Tilley v. United States*, 238 A.3d 961 (D.C. 2020) (holding that the District's Sexual Psychopath Act, D.C. Code §§ 22-3803 et seq., is unconstitutional and void in full).

issue in this case. Paragraph 22-4002(b)(3) states that the registration period shall be lifelong for a person who "[h]as been subject on 2 or more occasions to a disposition described in § 22-4001(3)(A) that involved a felony registration offense or a registration offense against a minor."[3] Paragraph 22-4002(b)(4) imposes lifetime registration on an individual who "[h]as been subject to 2 or more dispositions described in § 22-4001(3)(A), relating to different victims, each of which involved a felony registration offense or a registration offense against a minor."

## II. Facts and Procedural History

During Mr. Hawkins' sentencing hearing for misdemeanor sexual abuse of a child, an offense to which he had pled guilty, a dispute emerged between the government and Mr. Hawkins about his classification under SORA. The government, "understanding that . . . this [was] [Mr. Hawkins'] second conviction for a child sexual abuse charge, . . . request[ed] . . . [that he] register as a sex offender for life." Counsel for Mr. Hawkins did not dispute that Mr. Hawkins' convictions

---

[3] The government stated at oral argument that it understands the term "occasions" to refer to the occasions of separate cases resulting in an adjudication of guilt and sentence (i.e., in its view, a person is not a recidivist under § 22-4002(b)(3) simply by virtue of having being sentenced on multiple counts within a single case).

for misdemeanor sexual abuse of a child were "registration offenses" under § 22-4001(8)(D). But he did question whether Mr. Hawkins was a recidivist under SORA and therefore whether he should be subject to lifetime registration.

In subsequent briefing ordered by the trial court, the government argued that Mr. Hawkins is a lifetime registrant under the plain language of both recidivism provisions: under § 22-4002(b)(3), because each of his qualifying cases involved a different minor victim, and/or under § 22-4002(b)(4), by virtue of having one prior qualifying conviction as well as his instant qualifying guilty plea. Mr. Hawkins interpreted that same language differently. He argued that lifetime registration under either of the recidivism provisions should be imposed only upon a *third* qualifying offense because the phrases "has been subject on 2 or more occasions to a disposition" and "has been subject to 2 or more dispositions" "per force [could ]not include the disposition that is *presently* before [the] court."

After considering these arguments, the trial court ruled from the bench that Mr. Hawkins was only subject to a ten-year registration period, not the lifetime registration period requested by the government. The court reasoned that the non-recidivist lifetime registration provisions, § 22-4002(b)(1) and (2), use different language and vocabulary than the recidivist lifetime registration provisions,

§ 22-4002(b)(3) and (4), and therefore concluded that "if [the Council] had meant to convey the same idea [in all four provisions, it] would have used the same language." After ruling on the SORA issue, the trial court sentenced Mr. Hawkins for his present offense. This timely appeal of the court's sex offender certification order followed.

## III. Jurisdictional Question

Mr. Hawkins' first challenge to the government's appeal is a jurisdictional one. He argues that the trial court's sex offender certification order is not appealable as a final civil order under D.C. Code § 11-721 (2012 Repl.) because certification is part of the criminal case and the government has no right to appeal in a criminal case absent "express legislative authorization." This argument is foreclosed by the regulatory nature of the statutory scheme which establishes a registration and notification program, assigns responsibility for that program to an agency (CSOSA) which does not prosecute criminal cases, and defines no role for the government attorneys who do. *Supra* Part I. It is also foreclosed by our precedent, specifically our determination that SORA registration is a "civil remedy," not a "criminal penalty." *See In re W.M.*, 851 A.2d 431, 443 (D.C. 2004) (quoting *Smith v. Doe*, 538 U.S. 84, 92 (2003) (concluding that the Council's intent in passing the statute

"was to create a civil, nonpunitive regime" (internal quotation marks omitted)).[4]

Even if SORA registration overlaps operationally with criminal matters and "[d]espite the cogency of . . . objections to SORA as stigmatizing, onerous, and unfair to former offenders who have rehabilitated themselves," the statute does not create a criminal proceeding. *Id.* This certification order is thus appealable as of right under § 11-721.

## IV. Statutory Interpretation

Turning to the substantive question before us, we are confronted with a question of statutory interpretation, which we analyze de novo. *In re K.G.*, 178 A.3d 1213, 1219 (D.C. 2018). Our role is "to ascertain and give effect to legislative intent and to give legislative words their natural meaning." *Lopez-Ramirez v. United States*, 171 A.3d 169, 172 (D.C. 2017) (internal quotation marks omitted). This is a "holistic endeavor," in which we look not at "words in isolation . . . but [at their]

---

[4] To be sure, the Council's "denominat[ion]" of SORA as a civil statute did not end our analysis in *In re W.M.*, where the question before us was whether SORA effectively inflicts punishment and therefore was subject to constitutional challenges under the Ex Post Facto, Double Jeopardy, and Due Process Clauses. 851 A.2d at 434. But we need not address whether SORA is "so punitive either in purpose or effect as to negate the Council's intention to deem it 'civil,'" 851 A.2d at 442 (brackets omitted) (citing *Smith v. Doe*, 538 U.S. 84 (2003)), to resolve the jurisdictional question under D.C. Code § 11-721.

placement and purpose in the statutory scheme." *Off. of the People's Couns. v. Pub. Serv. Comm'n*, 163 A.3d 735, 740 (D.C. 2017) (internal quotation marks omitted). Moreover, when called upon to interpret a regulatory statute such as SORA, *see generally In re W.M.*, 851 A.2d 431, we must construe it "liberally . . . for the benefit of the class it is intended to protect," *In re Doe ("S.D.")*, 855 A.2d 1100, 1102 (D.C. 2004) (internal quotation marks omitted), and so we are obligated to interpret SORA with the understanding that it "was adopted to protect the public . . . from the threat of recidivism posed by sex offenders who have been released into the community." *Id.*

In their briefs and at oral argument, the parties made much of the terms "conviction" and "disposition," as well as the procedural matter of when SORA registration "occurs" during the lifetime of a case. Mr. Hawkins argued that both "conviction" and "disposition" refer to the "final judgment at the time of sentencing" and so concluded that at the time of Mr. Hawkins' plea in 2018, he had been subject to only one disposition (i.e., the disposition from two years prior). He further contended that sex offender certification must occur at sentencing and therefore that the government would have no right to order Mr. Hawkins to register for life after the conclusion of his present case. The government, on the other hand, argued that "conviction" and disposition" both refer to the moment at which the defendant is

"proved guilty," including "once a guilty plea is entered," and therefore that Mr. Hawkins had two dispositions by the time of his sentencing on the present offense. Indeed, the government claimed that Mr. Hawkins' plea "triggered" lifetime registration and that sex offender certification did not necessarily have to happen alongside sentencing. Underlying this debate was a dispute over the significance of the varying verb tenses throughout § 22-4002(b).

For the purposes of this case, we do not think it matters very much who is right, on any of these points. That is because no party to the case denies that § 22-4002(b)(1) and (2) apply to first-time offenders, despite the fact that "committed" and "determined"—and "convicted" in the incorporated clause § 22-4001(3)(a)—are firmly in the past tense, and despite the parties' disagreement over when, procedurally speaking, SORA registration ought to occur. That is to say, *whatever* a conviction is, and *whenever* it happens, it is undisputed that a person who commits a lifetime offense or is determined a sexual psychopath under § 22-4002(b)(1) and (2)—even if it is their first such conviction or determination— must register for life.

This shared interpretation of § 22-4002(b)(1) and (2) as applying to first-time offenders is impossible to square with Mr. Hawkins' suggested reading of

§ 22-4002(b)(3) and (4) as applying only to third-time offenders. The fact that the first two provisions conjugate verbs using the simple past tense, while the third and fourth provisions use the present perfect tense (i.e. "has been"), is perhaps inelegant. But seeing as both tenses are used to refer to events that have already happened,[5] this inelegance does not create any substantive difference in the provisions' application.

Nor are we persuaded that there is any great significance in the Council's use of the phrase "committed a registration offense" in § 22-4002(b)(1), and its use of the term "disposition" in § 22-4002(b)(3) and (4). The statute defines "committed a registration offense" in § 22-4001(3)(A)(i) to mean, in relevant part, "[w]as convicted or found not guilty by reason of insanity of a registration offense." Although the statute does not define "disposition" as such, § 22-4002(b)(3) and (4) explicitly incorporate the very same definition of "committed a registration offense," in their reference to "dispositions described in § 22-4001(3)(A)." There can be no doubt that, by its own description, the Council is using the phrases "committed a

---

[5] *See The Present Perfect Tense*, Collins Online Dictionary, https://grammar.collinsdictionary.com/easy-learning/the-present-perfect-tense; https://perma.cc/3D3T-SCV5 (last visited September 22, 2021) (explaining that the present perfect is "used to talk about events that are relevant to the present but that happened in the past").

registration offense," "was convicted," and "has been subject to [a] disposition[]" interchangeably, further confirming our conclusion that, if § 22-4002(b)(1) and (2) include the present offense, so must § 22-4002(b)(3) and (4).

Reinforcing our understanding that § 22-4002(b)(3) and (4) operate in parallel with § 22-4002(b)(1) and (2) is the notable absence of any other statutory provision setting out the registration obligations of a person convicted for a second qualifying offense. If Mr. Hawkins were correct, and § 22-4002(b)(3) and (4) were effectively "three strikes" rules, we would expect the statutory scheme to clarify whether a second-time offender should register for multiple ten-year registration periods consecutively or simultaneously. The lack of any such guidance suggests that the Council did not contemplate a situation involving "stacked" registration periods.

Lastly, the statute does not specify a moment at which certification must occur, nor is it necessary to determine that moment in order to decide the issue before us. Although the parties argue as if it matters whether the Superior Court certifies sex offenders before or after sentencing, the statute does not reference *any* stage of a criminal case. All it says is that certification occurs "[u]pon a finding that a defendant committed a registration offense," § 22-4003. As above, we are satisfied

that this language encompasses the instant case, and thus discern no need to decide whether certification must happen at a particular moment in time.

For all of these reasons, we conclude that D.C. Code § 22-4002(b)(3) and (4) apply to individuals upon their second qualifying disposition; or, in other words, that the language "two or more" is inclusive of the instant disposition.

## V. Conclusion

We vacate the trial court's certification of Mr. Hawkins as a ten-year SORA registrant and remand this case for redetermination of his status in accordance with D.C. Code § 22-4002(b).

*So ordered*.